[Civ. No. 17998. Second Dist., Div. Two. Mar. 27, 1951.]

ERROL LESLIE FLYNN, Appellant, v. LILIANE CARRE FLYNN, Respondent.

Jerry Giesler and Robert E. Ford for Appellant.

Loeb & Loeb and Adrian A. Kragen for Respondent.

MOORE, P. J.—Plaintiff appeals from a judgment rejecting his demand for a declaration of his rights under a property settlement agreement which was subsequently approved and incorporated in the interlocutory decree of divorce entered at the suit of the wife, respondent herein. By his second amended complaint in the instant action appellant alleged that a controversy existed between himself and respondent relative to the meaning of their agreement which provided for monthly payments of $1,500 for maintenance and support aggregating $18,000 annually* and, in anticipation of a possible change in the income tax laws, the writing provided by paragraph 16 thereof as follows: "In the event that any law,

---

*Numerous other covenants contained in the agreement do not affect the merits of the present controversy.

either federal or state or both, is enacted and becomes effective under which Mrs. Flynn may or will be required to pay federal or state income tax or both upon the amounts received by her from Flynn for her support and maintenance and under which Flynn is allowed to deduct or exclude from his taxable income all or part of such amounts, then beginning with the date upon which such law becomes effective and continuing thereafter as long as Flynn is required to make payments to Mrs. Flynn for her support and maintenance, Flynn shall pay to Mrs. Flynn in addition to all other payments provided for herein the lesser of the following two amounts: (1) The amount by which the total of any federal and state income taxes Mrs. Flynn may be required to pay exceeds the amount of such taxes she would have been required to pay if the payments received by her from Flynn were not included in her taxable income; (2) the amount by which the total of any federal or state income taxes Flynn would have been required to pay if he were not entitled to deduct or exclude from his taxable income any of the payments required to be made hereunder to Mrs. Flynn exceeds the total amount of any such taxes he is required to pay.''

The pleading then declares ''an actual controversy exists between the plaintiff and defendant, relating to the legal rights and duties of the plaintiff and defendant, under the aforesaid judgment incorporating said Property Settlement Agreement, in particular, as follows:

''A. Plaintiff contends that the true and correct meaning of the Property Settlement Agreement between the parties, and particularly, with reference to Paragraph 16 thereof, all as set forth in Exhibit 'A,' is that plaintiff shall only be required to reimburse defendant for the Federal and State Income Tax which defendant may, or will be required to pay upon the amounts received by defendant from plaintiff for her support and maintenance under and pursuant to the terms and provisions of said Property Settlement Agreement. In particular, plaintiff contends that the amounts paid to defendant as and for defendant's taxes for the preceding taxable year, as provided in Paragraph 16 of said Property Settlement Agreement, shall not be computed as support and maintenance received by defendant from plaintiff in determining the amount of money to be reimbursed to defendant under the terms of Paragraph 16 of said Property Settlement Agreement. Defendant contends to the contrary, and claims that under the provisions of Paragraph 16 of said Property

Settlement Agreement plaintiff is obligated to reimburse defendant for her Federal and State taxes on all sums received by defendant from plaintiff including therein such sums of money as plaintiff shall have paid defendant for her support and maintenance, together with such sums of money as plaintiff may have paid defendant in reimbursement of defendant's taxes for the preceding year.''

By her answer respondent admits appellant's allegation of his contention that the amounts paid to defendant as and for her taxes for the preceding taxable year shall not be computed as support and maintenance in determining the amount of money to be reimbursed to defendant. Also, she admits that she claims that under paragraph 16 plaintiff is obligated to reimburse defendant for her federal and state taxes on all sums received by defendant from plaintiff, including therein such sums of money as plaintiff shall have paid to defendant for her support and maintenance together with such sums of money as plaintiff shall have paid defendant in reimbursement of defendant's taxes for the preceding taxable year, ''but that the amount to which defendant is entitled under paragraph 16 shall not be more than the amount by which the total of any Federal or State income taxes plaintiff would have been required to pay if he had not been entitled to deduct the payment to defendant from his taxable income exceeds the total amount of any such taxes plaintiff is actually required to pay. Except as hereinabove admitted, the allegations of paragraph IV of plaintiff's complaint are denied.''

At the trial of the action the court held the complaint to be insufficient, determined summarily that the agreement attached to the pleading, as approved by the court, is not ambiguous, rejected plaintiff's offer of proof, made and filed findings in accordance with defendant's contention as to the meaning of the agreement and entered judgment in accordance therewith.

By virtue of the presence of a valid complaint it was prejudicial error to deny plaintiff's offer of proof. ▮ An actual controversy existed. This is established by the allegations of both parties. ▮ A complaint for declaratory relief is legally sufficient if it declares facts showing the existence of an actual controversy over the rights and duties of the parties under a written instrument and demands their adjudication. (*Columbia Pictures Corp.* v. *DeToth*, 26 Cal. 2d 753, 760 [161 P.2d 217, 162 A.L.R. 747]; *Maguire* v. *Hi-*

*bernia Savings & Loan Society,* 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].)

Appellant might with reason have contended that at the date of the agreement the law requiring a divorcee to report as income the sums paid her for support had not been enacted; that the entire field of taxation was strange to him; that in anticipation of such legislation, however, he undertook to mollify its asperities for respondent by arranging to pay the tax upon the support money to be received under the contract; that he meant to relieve her of the burden of the tax on her support money but had no intention of doing more. Had he so testified and if others present at the conference had supported him, the court might justifiably have found that a fair interpretation of the agreement is that the reimbursement to be made to respondent by appellant is limited to the amount she has paid as tax on the sum she has received as support money. The basis for respondent's position consists wholly of a "construction" of the agreement. In that situation the court is confronted with a serious demand for an interpretation of the agreement and a declaration of the rights of the parties.

In the light of the cited authorities a controversy existed which appealed to equity. Having paid respondent $18,000 for her support in 1943, in 1944 she reported as additional income for 1943 the sum of $10,600 paid to her in reimbursement for the amount of the taxes she had paid on the $18,000 support money received in 1943. According to respondent's contention when 1945 arrived she was entitled to be paid not only the $18,000 for that year's support and the $10,600 reimbursement for the tax she had paid on it in 1944, but, also, having paid $12,000 taxes on the $28,600, she demanded reimbursement for the $12,000 paid on her income of 1944. It is a contention that reasonably might have been made upon the testimony of both parties as to their understanding of their agreement that appellant became obligated to pay the tax on the tax on the tax, *ad infinitum,* as they gather greater volume and intensity through the years.

Intent is ·the paramount feature of a contract. In order to ascertain it from a written document the trial court may consider not only the circumstances of its making but also the object, nature and subject matter of the instrument and the negotiations of its authors that preceded its execution. By such proof the court is made conscious of the situation of the parties at the time they attempted to record their under-

standing. (Code Civ. Proc., §§ 1860, 1856; *Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665].) If the language employed in the writing is fairly susceptible of either one of two interpretations contended for, without doing violence to its usual and ordinary import or some established rule of construction, a latent ambiguity exists that must be resolved. To do so, resort must be made to extrinsic evidence as provided by section 1860, *supra,* in order to ascertain the intention of the parties. (See 4 Cal. Jur. 10-Yr. Supp., p. 119.) Where a divorced wife sued for moneys she claimed as support money under a written contract with her husband and the latter contended that the agreement was clear and unambiguous and meant to assign half of his wages from present and future employment and that such assignment of future wages was void, the court heard the evidence and found that it was the intention of the parties to draw a separation agreement and to provide for the wife's support and that they had agreed that one half of the husband's wages was the amount of such support and that the writing was not intended as an assignment of future wages. The husband contended that the evidence had been improperly admitted to prove the intent of the parties. But the court reaffirmed the rule that "parol evidence is not only admissible to explain an ambiguity appearing on the face of the document but is admissible to show what appears to be a perfectly clear agreement, in fact, meant something entirely different to the parties." (*Wells* v. *Wells,* 74 Cal.App. 2d 449, 456 [169 P.2d 23]; citing Code Civ. Proc., § 1860; *Universal Sales Corp.* v. *California Press Mfg. Co., supra.*)

■ Inasmuch as the purpose of an action for declaratory relief is to obtain an interpretation of a contract, the decree provides only for a determination of the purposes intended and not for a modification of its terms. (*Putnam* v. *Putnam,* 51 Cal.App.2d 696, 699 [125 P.2d 525].) ■ Where an actual controversy exists and the writing requires extrinsic proof of the intention, it is error to deny the evidence offered. (*Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747].)

■ There was no occasion to make findings after the court had refused to hear evidence of the contentions of the parties. There was nothing to find. By sustaining the general objection to the introduction of evidence the court in effect sustained a general demurrer to the complaint. It has long been the practice when a complaint is held to be insufficient to

dismiss the action when the pleading is not capable of such amendment as would state a valid cause of action. When the court sustained the general objection it left the plaintiff in exactly the same situation as if it had granted a nonsuit. In either event, the plaintiff is not entitled to findings. (*Bradley Co.* v. *Ridgeway,* 14 Cal.App.2d 326, 330 [58 P.2d 194]; *Colver* v. *W. B. Scarborough Co.,* 73 Cal.App. 421, 432 [238 P. 1096].) The court having rejected appellant's offer of evidence, the filing of findings and judgment was an effective denial of due process of law. (5 Cal.Jur. 875.)

Reversed.

McComb, J., and Wilson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 24, 1951. Edmonds, J., voted for a hearing.