[Civ. No. 15866. First Dist., Div. Two. May 24, 1954.]

DOROTHY D. TALIAFERRO, Respondent, v. EUGENE A. TALIAFERRO, Appellant.

E. A. Taliaferro, in pro. per., for Appellant.

Masterson, Bernheim & Sugarman for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of Contra Costa County in favor of plaintiff in the sum of $5,862.29. Plaintiff's complaint alleged a written

contract, a property settlement agreement and a breach thereof by defendant. Defendant's answer admitted the execution of the contract, but denied the breach. Defendant cross-complained for declaratory relief asking an adjudication that defendant was not liable to plaintiff for any payments under paragraph Seventh of the settlement agreement since the date of the wife's remarriage. The cross-complaint also alleged overpayments under the agreement and asked for an accounting and judgment for defendant for the excess payments. Plaintiff's demurrer to the cross-complaint having been overruled and her motion to strike granted only as to a part thereof, she filed an answer to the cross-complaint. Her answer admitted the allegations of the cross-complaint to the effect that the Superior Court of Contra Costa County in a prior action (No. 29810) had made an adjudication that said property settlement agreement was not merged in the interlocutory or final decrees of divorce entered in that action, and that it was without jurisdiction to order a modification of the terms of the property settlement agreement. Plaintiff's answer also denied any overpayment under the settlement agreement.

Dorothy Taliaferro, plaintiff and respondent, had on September 7, 1943, filed suit for divorce against her husband, Eugene Taliaferro, defendant and appellant herein. On December 1, 1943, they entered into an agreement dividing their property. Provision Fifth of the agreement provided that the community property of the parties be divided in the following manner: the auto wrecking, repairing, and new and used parts business was to remain under the management and control of the husband and he was to be entitled to all profits therefrom; the value of the business and premises on which it was located was agreed to be $20,000, and in the event of a sale of the business the wife was to receive $10,000 for her interest therein; the husband was to pay the taxes and assessments on the real estate of the parties and pay off all liens when due, and was to receive all rentals therefrom. Each party was entitled to receive one-half of the price from the sale of any real estate made after the date of the agreement as well as one-half of the proceeds of any pending contracts for the sale of realty.

Paragraph Sixth of the agreement provided that the custody of the two minor daughters be given to the wife with visitation rights to the husband. Paragraph Seventh, which gives rise to the present controversy, reads as follows:

"The husband agrees to pay the wife the sum of Three Hundred and Fifty Dollars ($350.00) per month for the support of herself and the two minor children of the parties beginning on the 1st day of December, 1943, and continuing in monthly installments on said 1st day of each and every month thereafter."

During all negotiations leading up to the signing of the agreement the wife was advised by counsel who drew up the property settlement. The husband was also represented by counsel in the negotiation and execution of this agreement. Both the interlocutory decree of divorce dated January 3, 1944, and the final decree made and entered on January 10, 1945, approved and made a part of each order the property settlement agreement of December 1, 1943.

An order to show cause *in re* contempt was issued in April, 1945, and hearings were continued from time to time until July 20, 1945. In January, 1946, another order to show cause was issued and continued from time to time. Appellant testified that at the hearing he was held in contempt and ordered to pay up, which he did. It is to be observed that at the time it was generally held that both judgment remedies and contractual remedies were available to enforce a property settlement agreement. (*Gummerson* v. *Gummerson*, 14 Cal.App.2d 450 [58 P.2d 394] ; 39 Cal.L.Rev. 250.)

On April 1, 1947, the eldest daughter of the parties, Janet Taliaferro, married and respondent apparently acquiesced in a reduction in the monthly payments to the extent of $75. The trial court found that there had been a voluntary modification on the part of plaintiff from $350 per month to $275 beginning January 1, 1947.

On April 18, 1947, respondent married Louis Finn. There is a dispute as to when appellant learned of respondent's remarriage, appellant contending that he first had proof of it in May, 1948, whereupon he stopped making monthly payments for her support. Respondent testified that appellant knew of her marriage, that she lived 10 blocks from appellant, that he called on their daughter in respondent's home when Mr. Finn was present, and that at times Mr. Finn even worked for appellant.

After May, 1948, no further payments were made by appellant under the Seventh paragraph of the agreement with the exception of $800 which was paid by appellant during 1948 for the support of the younger daughter in a convent boarding school. Appellant did advance sums of money to

respondent during that period which he insisted must be considered as advances against her share of future sales of real property and not as support payments. The parties stipulated that these payments might be credited against the judgment in this action.

In March, 1949, appellant made a motion to modify the final decree of divorce in Action No. 29810, and on June 23, 1949, the Superior Court of Contra Costa County made an order modifying said decree by striking out paragraph Seventh of the property settlement agreement. On July 6, 1949, respondent filed a motion to vacate the order of June 23, 1949, and on September 16, 1949, the court made an order vacating the order modifying the final decree, the court having determined that the ''Property Settlement Agreement . . . was not merged in the interlocutory and final decrees of divorce . . . and that this court therefore is without jurisdiction to make an order modifying the terms of said property settlement agreement. . . .'' The court was led to reverse itself because of the case of *Shogren* v. *Superior Court,* 93 Cal.App. 2d 356 [209 P.2d 108], which had been decided on August 17, 1949. There was no appeal from the order vacating the order of modification.

On September 29, 1949, respondent filed the present action demanding payment of arrears under paragraph Seventh of the property settlement agreement.

The trial court found that by reason of the evidence and stipulation of the parties plaintiff was entitled to receive $275 per month for specified periods and $200 per month for other specified periods; that defendant was entitled to certain setoffs and credits; that certain allegations of the complaint were true; that certain allegations of the answer were untrue; that there was an actual controversy requiring the court to pass on the cross-complaint; that certain allegations in the cross-complaint were true, others untrue, and that the Seventh paragraph of the property settlement agreement was a part of the division of the community property of the parties and was not alimony; that under the Seventh paragraph plaintiff was entitled to receive payments for life irrespective of her subsequent marital status, that plaintiff had waived a portion of the payments and had consented to a reduction thereof. The court found that up to and including September, 1952, $16,500 was due under paragraph Seventh, and that appellant was entitled to credits of $10,637.71. Judgment was therefore rendered in favor of respondent in the sum of $5,862.29.

Appellant contends that the husband's obligation to continue support payments to the wife automatically terminated upon her remarriage by virtue of the provisions of section 139 of the Civil Code. Section 139 deals with the power of the court in a divorce action to make an award of support for the wife and children of the marriage. When the property settlement herein was made (1934) that section contained the following provision: "Upon the remarriage of the wife, the husband shall no longer be obligated to provide for her support but such remarriage shall not affect his duty to provide for the maintenance of the children of his marriage." In 1951 that provision was amended to read: "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon remarriage of the other party." Appellant contends that we must regard section 139, Civil Code, as it read in 1943 as written into the contract, and that strong public policy demands that support be terminated upon remarriage. ▮ Section 139 places no limitations upon the rights of husband and wife to contract with each other as they please, and if the husband for adequate consideration contracts to give support beyond that for which he is strictly obligated, he has the right to thus freely contract with his wife. This is not being imposed upon him by the power of the court, but is something which he undertakes voluntarily, and in the present case, with advice of counsel.

Appellant relies upon *Cohen* v. *Cohen*, 150 Cal. 99 [88 P. 267], *Atlass* v. *Atlass*, 112 Cal.App. 514 [297 P. 53], and *McClure* v. *McClure*, 4 Cal.2d 356 [49 P.2d 584, 100 A.L.R. 1257]. In *Rosson* v. *Crellin*, 90 Cal.App.2d 753 [203 P.2d 841], where it was held that even though a court granting a divorce is powerless by reason of section 139 Civil Code, to compel a husband to provide support for his wife after her remarriage, the husband's unqualified agreement to do so will be enforced if it is part of the property settlement agreement or is otherwise supported by a valid consideration. There, as here, it was argued that the property settlement agreement was qualified by section 139, and that an agreement providing for support after remarriage was against good public policy. The court pointed out that though not "obligated" he had agreed without qualification as a part of a transaction in which property rights were settled, to make monthly payments during the wife's lifetime. The court distinguished the

Cohen, Atlass and McClure cases, *supra,* as cases relating to support ordered by the court and not involving the construction of property settlement agreements.

Appellant contends that a close study of all the California cases leads to the conclusion that this case belongs in the category of cases such as *Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15], where the provisions for support are severable and subject to modification by the courts. Also cited is *Dexter* v. *Dexter,* (Cal.App.) 253 P.2d 999 which held that the parties therein made an equal division of their community property plus an agreement for support and maintenance. Since appellant's brief was written, however, *Dexter* v. *Dexter* has been decided by the Supreme Court (42 Cal.2d 36 [265 P.2d 873], January 8, 1954). The decision distinguishes the Hough case as one in which it had become res judicata that the payments there involved were alimony and not an integral part of a property settlement. The case holds that ''In the absence of an order for the payment of alimony in the interlocutory decree . . . or a reservation of jurisdiction to make such an order in the future, . . . the court cannot, after the interlocutory decree has become final, add a provision for alimony or modify the amount of payments ordered pursuant to a property settlement agreement.'' (See also *Finnegan* v. *Finnegan,* 42 Cal.2d 762 [269 P.2d 873].)

█ Because of the decision of the Superior Court of Contra Costa County in case No. 29810, holding that the property settlement agreement was not merged in the interlocutory or final decree of divorce and therefore said court was without jurisdiction to modify the terms of the property settlement agreement, it is res judicata that there is no power in the court to modify the support provision. The court held that it had no power to modify, but it made no interpretation of the meaning of the terms of the property settlement agreement. The order was denied without prejudice. Whatever appellant's obligations are must be determined from the terms of the property settlement agreement, and cases dealing with the power of the court to modify support provisions are entirely irrelevant.

Appellant has by his cross-complaint sought declaratory relief, that is, a determination by the court as to what his rights and duties are under the terms of the property settlement agreement. He did not ask reformation of the contract. He did not claim that the contract mistakenly expressed an intent different than that agreed upon. He did not attack the

validity of it in any way, but simply asked for a declaration of rights and duties thereunder, alleging that he is not now obligated and for a long time past had not been obligated to pay plaintiff anything under paragraph Seventh of the agreement by reason of her remarriage and the changed circumstances of the children, that the amounts provided in that paragraph were by way of alimony and maintenance while plaintiff remained unmarried and were not by way of settlement of community or other property rights between the parties.

The trial court found in Finding 13 that an actual controversy existed as to the interpretation of the written agreement, that certain allegations were true except the clause ''and further and separately to provide for alimony for wife until her death or remarriage'' and that ''said agreement was made a part of the order of the court.'' (Finding 14.) The court also found (Finding 15) that the agreement and ''particularly provision Seventh thereof, was made for the purpose of providing for a division of the community interest in the properties of the parties and to provide for their rights therein and for no other purpose whatsoever, and that said agreement and provision Seventh thereof was not entered into for the purpose of providing for alimony and maintenance of the plaintiff while she remained unmarried, or otherwise, and was not a provision inserted therein providing for the support of the minor children; that by reason of said provision Seventh . . . plaintiff became entitled to receive from the defendant the sum of $375.00 per month for life, irrespective of marital status; but that the right to receive the whole of said sum . . . when the children . . . or either of them, do not reside with plaintiff, has been defined, limited and reduced by acquiescence and waiver of the plaintiff in manner as hereinbefore set forth in these findings.''

One of the introductory recitals of the agreement is that ''it is the mutual wish and desire of said parties that a full and final adjustment of all their property rights, interests, and claims be had, *settled and determined* by said parties *in this agreement*.'' And paragraph First states that ''*each party* is *hereby released and absolved from any and all obligations and liabilities* for any future acts and duties of the other, and each of said parties hereby releases the other from any and *all liabilities, debts, or obligations of any kind or character incurred by the other from and after this date, and from any and all claims and demands, including all claims of either*

*party upon the other for support and maintenance as wife or husband or otherwise, it being understood that this instrument is intended to settle the rights of the parties hereto in all respects* except as hereinafter provided.''

█ It is settled that the purpose of an action for declaratory relief is to obtain an interpretation of a contract, and a decree in such a case provides only for a determination of the purposes intended by the instrument, and not for a modification of its terms. (*Putnam* v. *Putnam*, 51 Cal.App.2d 696, 699 [125 P.2d 525]; *Flynn* v. *Flynn*, 103 Cal.App.2d 91, 96 [229 P.2d 5].) The language of provision Seventh provides support in the sum of $350 to be paid to the wife for herself and the minor children from December 1, 1943, ''and continuing in monthly installments on said 1st day of each and every month thereafter.''

If there is no ambiguity in the language of the agreement, then the trial judge's finding of the meaning of the contract is adequately supported. The document purports to make a final adjustment as of its date of all property rights, interests and claims, it releases the parties as to any future acts and duties, *including all claims for support and maintenance,* and it is to settle their rights *in all respects* unless it is otherwise therein provided. If the wife is to be paid $350 per month for each and every month thereafter, the only reasonable interpretation is that she is to be so paid as long as she lives. Respondent points out that the parties immediately gave up certain rights which ordinarily they would have had during the interlocutory period—the right to share in later acquired property, the right to share in the estate of the other. The wife agreed upon a valuation of her half share of the business when and if it should be sold; she agreed to the receipt of all rentals from the real property and all profits from the business by the husband. She was to be entitled to receive one-half the proceeds of any realty sold, but she had no right to force a sale of any of it, hence in effect she gave the husband a life estate in the wife's share of the community property. (*Buttlar* v. *Buttlar,* 71 N.J.Eq. 671 [65 A. 485].) Paragraph Ninth provided that in any divorce suit ''the respective property rights and interests of the parties shall be fixed and determined'' by the terms of this agreement. At the time the agreement was made, the wife's complaint in divorce demanding $500 per month support for herself and $100 per month for the child was already on file.

In *Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873], where the support and maintenance provision was very similar to that herein, except that it was expressly stated that it was to terminate on the wife's remarriage, the court held that since it was part of an agreement by which the parties expressly stated that they intended finally to settle both their property rights and duties with respect to support and maintenance and each waived any claim to maintenance except as expressly provided for therein, it would be contrary to the clearly expressed intention of the parties to hold that the provision for monthly payments constituted a separable agreement for alimony subject to the continuing jurisdiction of the court to modify. The court noted that such payments are of a dual nature designed to discharge the obligation of support and thus have the indicia of alimony, but to the extent that they represent a division of the community property, or constitute an inseparable part of the consideration for the property settlement, they are not alimony and cannot be modified by the court.

If, on the other hand, it can be said that the writing requires extrinsic proof of the intention of the parties, then it would be error to deny the evidence offered in proof thereof. *Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747]; *Flynn* v. *Flynn, supra.*) There may be some ambiguity in paragraph Seventh since it provides for support of *minor* children for each and every month thereafter.

Appellant contends that the court erred in sustaining objection to certain questions in regard to the intent of the parties in executing this agreement. Counsel asked respondent if there was any discussion regarding the property settlement agreement at which she was present as well as Mr. Taliaferro. The court first sustained the objection, but after an extended discussion, stated that he had misconstrued counsel's statement, and then overruled the objection, hence no prejudice resulted from this ruling. Counsel then asked if the matter of the division of property was discussed, and the court sustained an objection on the ground that it was foreign to the issue. The issue was, of course, the meaning of paragraph Seventh dealing with support. She was then asked if there was a discussion about the amount for her support and the support of the children to which she replied in the affirmative. Counsel then asked "And there was also a discussion about how the property should be di-

vided, was there not?" to which she replied, "Yes." When he then asked if those matters were discussed as separate items, respondent's counsel objected, but the court overruled the objection. It is therefore clear that no prejudice resulted from sustaining an objection to an almost identical question which was later allowed.

Counsel for appellant attempted to introduce into evidence affidavits signed by respondent when she instituted contempt proceedings against appellant in an effort to collect the $350 per month. The court had indicated that he would allow them to show her state of mind, or her understanding of the meaning of the $350 provision. But when the affidavit was read, and it simply recited that a certain property settlement agreement provided for the payment of $350 a month, the court decided that it had no probative value, that it was of no value for purposes of impeachment. When counsel offered it in evidence he stated that he wished to prove that plaintiff and her attorney regarded the agreement as part and parcel of the divorce decree, the purpose being to show that it should have all the attributes of a divorce decree providing for alimony, so that the alimony would fall upon remarriage of the plaintiff. The court then said (and it is this language which appellant criticizes as showing the court's erroneous theory) :

"Well, I think that's stretching things to the breaking point, myself. The decree is not before the Court. I may be quite wrong, . . . but it seems to me that that, and many other offers in this trial, would be highly proper if this were a proceeding in which the decree of the court were primarily before the Court, either in contempt proceedings or to have the decree amended or modified, or if it were a suit for reformation of the contract, something of that sort."

Appellant's theory at the trial appeared to be that to prove the paragraph Seventh was a support provision in the nature of alimony he must show that the property settlement agreement was intended to have been incorporated in the decree. ▆▆ But recent cases make it clear that the fact of incorporation alone would not prove that paragraph Seventh was an alimony provision and not a division of property. (*Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873] ; *Fox* v. *Fox*, 42 Cal.2d 49 [265 P.2d 881].) In *Flynn* v. *Flynn*, 42 Cal.2d 55 [265 P.2d 865], it is said that where the property settlement agreement appears to be an integrated agree-

ment the provisions for monthly payments cannot be modified contrary to its terms.

Appellant says that the court's theory of the case prevented him from getting in evidence to show that "the agreement between appellant and respondent was in its nature by virtue of their words and actions and all surrounding circumstances intended to be and construed by them to be a severable agreement containing an independent provision for support." Appellant does not, however, give any further transcript references to show wherein the court erred in its rulings. On page 152 of the transcript the court said to appellant's counsel, "I urge, I say repeatedly, that the meaning of that contract and the so-called support clause must be gleaned from what the parties said, did, thought and understood about it, and not what some attorney thought about it. It's their contract. The attorneys are strangers to the contract. The rights are between them, and nobody else. It's a question of interpretation." The trial judge then permitted appellant's counsel to cross-examine respondent at length as to her understanding of the $350 monthly payments, whether they were in the nature of alimony or property. ▆ She testified that she never considered them alimony, did not believe that they could be cut off if she remarried, that she considered that they were income coming to her from rentals of the properties and the automobile parts business. She stated that she had built the business with appellant. Respondent was questioned as to how she had reported this sum in her income tax returns, and she stated that it was reported just as income. The tax accountant who prepared her return was brought in, and testified he had put down the source of this income as "alimony," that he secured the information from respondent. Appellant's bookkeeper was also brought in to testify that when respondent called for her checks she referred to them as "alimony."

Defendant testified that when his daughter Janet came to live with him he was allowed to deduct $75 from the alimony each month for her support as a result of his conversation with respondent. After Jacqueline came to live with him, respondent agreed, he said, to deduct $75 for her support, leaving him owing her $200 per month. In May 1948 he stopped paying respondent anything on account of the paragraph in the agreement providing for her support. That was the first time he had been able to prove she had remarried, as she had continuously denied it on many oc-

casions. He then testified to his attempt to secure modification of the decree, and that before that he had been brought into court in contempt proceedings.

It is therefore clear that the trial court admitted abundant evidence of the intention of the parties as to the meaning of provision Seventh. The evidence was conflicting, and even though respondent's conduct in acquiescing in the reduced payments when her daughters did not reside with her, might strongly favor an interpretation that she regarded the provision as one for support only and not in the nature of a property provision as well, still there is testimony of hers which supports the trial judge's finding that she was entitled to the $350 per month for life but had waived it to the extent of $75 for each daughter when they were not with her.

█ Appellant contends finally that the court committed reversible error in making essential findings contrary to the admissions of the pleadings of respondent herself. It is true, as appellant contends, that respondent alleged that defendant performed under paragraph Seventh of the contract from the date of its execution until the first day of May 1948. Respondent also testified that appellant was paid up in full to May 1, 1948. Appellant's answer denied each and every allegation of the paragraph of the complaint in which payment to May 1, 1948 was alleged. Thus the matter was put in issue. Therefore the cases cited by appellant to the effect that findings contrary to admissions made by the pleadings are erroneous are not in point.

█ A counterclaim for overpayments was alleged in defendant's answer. It was necessary for the court to have some starting point in order to calculate the alleged overpayments. Appellant testified that at the time of the contempt proceedings he paid up in full, and had an opportunity of presenting all credits claimed at that time. He was not in arrears for the remainder of 1946. Therefore January 1, 1947, was taken as a starting point to calculate the amount which appellant owed under paragraph Seventh and the credits which were to be set off against the amount due. Appellant and his counsel apparently were agreeable to this procedure, as his counsel immediately asked to introduce the 1947 checks to show that appellant had overpaid the amount owing for that year. In his reply brief, appellant asks how defendant can be expected to come into court and be prepared to prove that he has faithfully made all his payments from

January 1, 1947, up to May 1, 1948, when the complaint alleges that he was paid in full to May 1, 1948. Appellant has shown that no prejudice resulted, first because he acquiesced in this method of computation, and second, because he evidently was prepared, since as noted above, his counsel asked at once to introduce the 1947 checks that he might show overpayment. There is clearly no merit in this contention.

It is our view that the judgment of the trial court finds ample support in the evidence and the law applicable thereto and that there is no prejudicial error in the record.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 23, 1954, and appellant's petition for a hearing by the Supreme Court was denied July 21, 1954.