[L. A. No. 24528.   In Bank.   Sept. 17, 1957.]

RUTH M. HILTON, Plaintiff and Appellant, v. ROLLIN L. McNITT, as Executor, etc., Defendant and Appellant.

Glenn R. Watson and Robert G. Beverly for Plaintiff and Appellant.

Edythe Jacobs for Defendant and Appellant.

CARTER, J.—This is an appeal from a judgment allowing and establishing a creditor's claim for $7,500 filed by Ruth M. Hilton against the estate of her deceased husband, Hal H. Hilton, based on a property settlement agreement entered into between them and on an award made in an interlocutory decree of divorce. The executor of the husband's estate, Rollin L. McNitt and the claimant both appeal. Mrs. Hilton's appeal is only on the denial of interest on her claim.

The major point involved on this appeal is the effect of the 1951 amendment to section 139 of the Civil Code. The portion of that amendment here involved provides, that "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment, or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party."

In the case at bar the parties entered into a property settlement agreement on July 25, 1953, pending divorce proceedings to be commenced by Mrs. Hilton. The agreement provides that it is the mutual intention of the parties to effect a final and complete settlement of their respective property rights with reference to their marital status "to each other." The agreement also provides that "Husband shall pay to wife for her support and maintenance $300 a month, payable on the first of each and every month commencing with the 1st day of August, 1953, and continuing until the first day of July, 1956." Other provisions in the agreement divide among the parties certain properties owned by them, and paragraph X provides that "Each of the parties in consideration of the agreements of the other herein expressed hereby waives, releases and relinquishes to the other all claims each may now have, or might hereafter otherwise acquire against the other, as husband or wife, or otherwise, arising out of the marital relation." On the same day, the parties entered into a "stipulation in re alimony, attorney fees, court costs, title and possession of property" in accord with the

applicable provisions in the property settlement agreement and stipulated further that defendant was to pay plaintiff "the sum of $300 per month, commencing on August 1, 1953, and continuing thereafter on each and every month, on the first day of such month until the first day of July, 1956." On the stipulation was written "Approved and so ordered" and the signature of the trial judge. On August 21, 1953, plaintiff was granted an interlocutory decree of divorce which provided that "It is further ordered that defendant pay to the plaintiff the following sums: $300 per month commencing October 1st, 1953, and on the 1st day of each month thereafter until the 1st day of July, 1956. . . ."

Mr. Hilton died about July 25, 1954, and Mrs. Hilton remarried about September 18, 1954. Mrs. Hilton presented a creditor's claim for 25 monthly installments of $300 (a total of $7,500) beginning on July 1, 1954, under both the property settlement agreement and the interlocutory decree of divorce. The executor approved the claim to the extent of $300 for the support and maintenance due July 1, 1954, prior to Hilton's death, and rejected the balance of the claim because it was based on support and maintenance of Mrs. Hilton as the former wife of the decedent and that such right terminated with Hilton's death. Mrs. Hilton filed suit against the executor for the whole claim. The trial court held that the contract was an integrated and inseparable part of a property settlement agreement; that the monthly payments were installments in settlement of the parties' marital rights rather than payments for support and maintenance. It was concluded that the obligation for the monthly payments did not terminate upon the death of the decedent or on the remarriage of the wife.

The executor contends that an integrated property settlement agreement is subject to section 139 of the Civil Code as amended in 1951 and that provisions in a property settlement agreement or in a decree for support and maintenance terminate on death or remarriage unless there is a provision in the agreement or decree which negates the intention that the payments should so terminate. With this contention we agree.

■ The husband's obligation for support of a former wife is an obligation growing out of the marital relationship. This obligation for support would, without reference to any property settlement agreement, or decree of divorce, normally cease upon the husband's death subject only to the wife's rights under the community property laws of this state. In

the event of a divorce and the wife's remarriage the obligation for her support would, normally, fall upon the then husband. Prior to 1951, section 139 of the Civil Code provided that upon the remarriage of the wife, the husband was no longer obligated for her support. This, then, was the announced public policy of this state prior to 1951. The 1951 Legislature amended section 139 so as to provide that unless the parties otherwise agree in writing, the obligation of any party in any decree, judgment, or order for the support and maintenance of the other party shall terminate upon the death of the obligor or the remarriage of the obligee. As was held in *Taliaferro* v. *Taliaferro*, 125 Cal.App.2d 419, 424 [270 P.2d 1036], "Section 139 [as it read prior to the 1951 amendment] places no limitations upon the rights of husband and wife to contract with each other as they please, and if the husband for adequate consideration contracts to give support beyond that for which he is strictly obligated, he has the right to thus freely contract with his wife. This is not being imposed upon him by the power of the court, but is something which he undertakes voluntarily, and in the present case, with advice of counsel." Inasmuch as the amendment is specific to the effect that *"Except as otherwise agreed by the parties in writing"* the obligation of the husband shall cease upon his death or the remarriage of the wife we must hold that since neither the agreement nor the decree here provided that the monthly support payments were to continue beyond the death of the obligor or the remarriage of the obligee plaintiff may not prevail except for the month which was due and owing prior to decedent's death. The agreement was executed subsequent to the 1951 amendment and the parties and their attorneys are presumed to know the law applicable to such property settlement agreements. It would appear that had the parties intended that Mrs. Hilton was to receive a certain sum of money without regard to her remarriage or the obligor's death it would have been a simple matter to make their intentions known in the property settlement agreement. In view of the language of the amendment that "except as otherwise agreed in writing" the payments for support and maintenance terminate upon the death of the obligor or remarriage of the wife we are of the opinion that such payments terminated upon the death of the obligor.

We hold, therefore, that the 1951 amendment to section 139 is applicable whether or not the property settlement agreement is integrated and inseverable. In other words, if

monthly payments are provided for support and maintenance or alimony such payments will cease by force of the language of section 139 of the Civil Code unless the parties agree in writing that the payments are to continue despite the remarriage of the wife or the death of the husband.

Mrs. Hilton claims that she is entitled to interest on the judgment. Section 730 of the Probate Code provides that a judgment against an executor conclusively establishes the validity of the claim for the amount of the judgment and that the executor must pay the amount ascertained to be due. ▮ Judgments ordinarily bear interest at the statutory rate. However, only after an order for payment is the executor obliged to pay any general claim against the estate (Prob. Code, §§ 951, 952). This court said in *Estate of Bell,* 168 Cal. 253, 258, 259 [141 P. 1179], that "[I]t is settled by our decisions that the allowance of a claim against a solvent estate is not equivalent to an ordinary judgment. It is a judgment only in a qualified sense, and does not attain the force and dignity of an absolute judgment until an order of court is made directing the executor or administrator to pay it. Until then it is simply an acknowledged debt of the estate, bearing interest at the contract rate. It is only after such an order is made that it bears interest at the statutory rate." And in *Estate of Girard,* 110 Cal.App.2d 203, 204 [242 P.2d 669], the court stated that "The only question presented to us is whether a non-interest-bearing debt of a decedent bears interest at the statutory rate from the date of the allowance and approval of the creditor's claim. We have concluded that under the existing statutory law it does not." ▮ It follows, therefore, that plaintiff is entitled to interest at the statutory rate on the amount owed at the time of decedent's death only after the executor has been ordered to pay her claim.

The judgment is reversed.

Shenk, J., Schauer, J., and McComb, J., concurred.

TRAYNOR, J., Concurring and Dissenting.—I agree that the 1951 amendment to Civil Code, section 139 applies to support provisions in an integrated agreement incorporated in a divorce decree entered subsequent to the effective date of that amendment. Before that amendment the obligation to support under the provisions of an integrated agreement did not terminate on death or remarriage unless the agreement so provided. (*Anderson* v. *Mart,* 47 Cal.2d 274, 280 [303 P.2d

539].) If the obligation to support incorporated in a divorce decree was not part of an integrated agreement, it always terminated on death or remarriage. (Civ. Code, § 139.) Thus, there was no necessity for the 1951 amendment unless it applied to support provisions in integrated agreements.

In my opinion, however, the obligation in the present case did not terminate on death or remarriage, for the parties "otherwise provided." True, they did not specifically mention death or remarriage, or any other contingency, but by providing that the payments should continue until the "first day of July, 1956" they agreed that the payments were not to terminate for any reason before that date. By specifying that date, they necessarily precluded any other.

I would affirm the judgment.

Gibson, C. J., and Spence, J., concurred.

The petition of plaintiff and appellant for a rehearing and application to augment the record were denied October 17, 1957. Gibson, C. J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.