[Civ. No. 25571.   Second Dist., Div. One.   Dec. 7, 1961.]

MARY C. HAUKENBERRY, Plaintiff and Appellant, v. ESTATE OF HOWARD M. HUBBELL, Deceased, et al., Defendants; BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, as Executor, etc., et al., Defendants and Respondents.

John L. Bland, Behymer & Hoffman and Gordon Hunt for Plaintiff and Appellant.

Merwin O. Johnson for Defendants and Respondents.

WOOD, P. J.—This is an action to recover money allegedly due under a property settlement agreement.  Plaintiff appeals from (1) an order granting a motion "of the defendants" for

judgment on the pleadings, and from (2) the judgment entered upon said order.

It is to be noted that the named defendants are the "Estate" and the bank "as Executor of said Estate." The first amended answer was filed by "the above named defendant." Since the "Estate" is not a legal entity, it will be assumed that the answer was filed on behalf of defendant Bank of America. It will also be assumed that the bank appeared as executor of the will of Howard M. Hubbell, deceased.

As a first cause of action, the complaint alleged, as follows: The defendant Bank of America is the duly qualified and acting executor of the estate (will) of Howard M. Hubbell, deceased. On April 14, 1955, plaintiff and Howard M. Hubbell were married and living together as husband and wife in Long Beach, California. On April 14, 1955, they entered into a property settlement agreement, as follows:

"Property Settlement Agreement."

"This Agreement made this 14th day of April, 1955, by and between Howard Hubbell and Mary Hubbell, husband and wife, to set forth their property rights and support money is as follows:

"Mrs. Hubbell will execute and deliver to Mr. Hubbell a Quit Claim Deed conveying to Mr. Hubbell any interest she may have in and to that certain property known by street and number as 221 Roswell Avenue, Long Beach, California, and described as Lot 10 in Block A of N Tract in the City of Long Beach, as per Map recorded in Book 9, Page 139 of Maps, in the office of the County Recorder of Los Angeles County.

"Mr. Hubbell acknowledges receipt of said deed.

"Mr. Hubbell will give to Mrs. Hubbell $100.00 in cash, his check for $6900.00 drawn on the Belmost Shore Branch of the Bank of America, and his note for $8,000.00, dated April 14th, 1955, due on or before April 14th, 1956, with interest at the rate of 6 per cent per annum.

"Mrs. Hubbell acknowledges receipt of said cash check and note.

"Mr. Hubbell agrees to pay to Mrs. Hubbell $250.00 per month alimony, during her life time, beginning May 1st, 1955, and payable on the 1st day of each and every month thereafter.

"In the event that Mrs. Hubbell re-marries the alimony payments shall cease.

"Mrs. Hubbell hereby waives any and all claim against Mr. Hubbell except as herein set forth.

H. M. Hubbell

Mary Hubbell

"Witness:

    Guy F. Bush"

The said "property settlement" was executed in duplicate, and an executed copy was delivered to each of the parties thereto, and remains in force and effect. Howard Hubbell made all payments due thereunder until the time of his death on October 22, 1959, and that there remains due and unpaid on said agreement the payments of $250 per month beginning November 1, 1959, and continuing during the lifetime of plaintiff. At the date of Howard Hubbell's death, plaintiff was 73 1/6 years of age, and she had a life expectancy of 10.99 years, and is entitled to be paid $250 per month beginning on November 1, 1959, or a lump sum of $32,970. Said "defendant estate" has refused to pay any portion thereof. Within the time provided by law, plaintiff presented and filed her claim against said estate, which claim was rejected by the executor on February 11, 1960.

As a second cause of action, the complaint alleged, as follows: Plaintiff adopts paragraphs I, II, and III of the first cause of action as though such paragraphs were again set forth in full. (The allegations of those paragraphs pertain to the appointment of the bank as executor and to the marriage of plaintiff and Howard.) On May 3, 1955, plaintiff secured an interlocutory judgment of divorce from Howard Hubbell, a copy of which judgment is attached to and made a part of the complaint. Said interlocutory judgment became final on May 29, 1956, and a final judgment of divorce was entered in said action, a copy of which final judgment is attached to and made a part of the complaint.

The interlocutory judgment included the following provision: "It is further ordered that defendant pay to plaintiff as alimony the sum of $250.00 per month, each and every month on the 1st day of each month beginning June 1st, 1955, and continuing during the lifetime of plaintiff or until she remarries."

The first amended answer denied that: the property settle-

ment agreement is in force and effect; that payments of $250 per month, or payments in any amount, remain due and unpaid under said agreement beginning November 1, 1959; that plaintiff is entitled to be paid $250 a month, or any amount, during her life expectancy or at any time; that the provision in the interlocutory judgment relating to the payment of $250 a month to plaintiff as alimony was to continue beyond the life of Howard Hubbell. Said answer alleged that the provision in the property settlement agreement relating to alimony is separate from the provisions of the agreement for settlement of the property rights of the plaintiff and the decedent; that the provision in the agreement relating to alimony was merged in the interlocutory judgment; that Howard Hubbell died on October 22, 1959; that neither the property settlement agreement nor the interlocutory judgment contains a provision in writing whereby the payments of alimony should continue beyond the life of Howard Hubbell, as required by section 139 of the Civil Code.

The motion of the defendant executor for judgment on the pleadings stated, in substance, as follows: The alleged causes of action in the complaint do not state facts sufficient to constitute a cause of action, for the following reasons: the property settlement agreement contains no provision in writing that the alimony payments shall continue beyond the lifetime of the obligor; the interlocutory judgment does not contain an order that such payments are to continue beyond the lifetime of the obligor; the complaint in the divorce action did not allege that there was community property or any writing whereby Howard Hubbell agreed to be bound for alimony payments beyond the period of his life; the interlocutory judgment did not show that there was community property or such an agreement in writing.

A minute order, with reference to the motion for judgment on the pleadings, states: "Motion Granted, *Hilton* v. *McNitt,* 49 Cal.2d 79 [315 P.2d 1]."

The judgment, with reference to said motion, states that the motion having been submitted and the court having made its order granting the motion, it is adjudged that plaintiff take nothing.

Section 139 of the Civil Code was amended in 1951 to include the following provision: "*Except as otherwise agreed by the parties in writing,* the obligation of any party in any decree, judgment or order for the support and maintenance of the

other party shall terminate upon the death of the obligor or upon the remarriage of the other party.'' (Italics added.)

In *Hilton* v. *McNitt*, 49 Cal.2d 79 [315 P.2d 1], Mr. and Mrs. Hilton made a property settlement agreement, on July 25, 1953, which provided that it was their intention to effect a final and complete settlement of their property rights; and it also provided that ''Husband shall pay to wife for her support and maintenance $300 a month, payable on the first of each and every month commencing with the 1st day of August, 1953, and continuing until the first day of July, 1956.'' There were other provisions therein whereby certain properties were divided between the parties, and there was a provision to the effect that each party waived all claims he or she might then or thereafter have against the other party arising out of the marital relation. On the same day that they made such agreement, they entered into a stipulation regarding alimony, attorney fees, costs, title and possession of property, in accordance with provisions of the property settlement agreement, and they stipulated further that Mr. Hilton would pay to Mrs. Hilton $300 a month commencing August 1, 1953, and continuing until the first day of July, 1956. The words ''Approved and so ordered,'' and the signature of the trial judge, were on the stipulation. The interlocutory judgment of divorce, which was granted to Mrs. Hilton on August 21, 1953, ordered that Mr. Hilton pay to Mrs. Hilton $300 a month commencing October 1, 1953, and on the 1st day of each month thereafter until the 1st day of July, 1956. Mr. Hilton died in July 1954, and Mrs. Hilton remarried in September 1954. Mrs. Hilton commenced an action (based on her creditor's claim) against the executor of the will of Mr. Hilton to recover $300 a month under the property settlement agreement and the interlocutory judgment, covering the period from Mr. Hilton's death to July 1, 1956. The trial court therein held that the agreement was an integrated property settlement agreement, and that the monthly payments were in settlement of marital rights rather than payments for support, and that the obligation for the payments did not terminate upon the death or remarriage. The executor therein, who appealed from judgment, contended that an integrated property settlement agreement was subject to section 139 of the Civil Code, as amended in 1951, and that provisions in a property settlement agreement, or in a decree for support, terminate on death or remarriage unless there is a provision in the agreement or decree which negates the intention that

the payments should so terminate. The court therein said (p. 81) : "With this contention we agree." The court also said (pp. 81-83) : "The husband's obligation for support of a former wife is an obligation growing out of the marital relationship. This obligation for support would, without reference to any property settlement agreement, or decree of divorce, normally cease upon the husband's death subject only to the wife's rights under the community property laws of this state. . . . Prior to 1951, section 139 of the Civil Code provided that upon the remarriage of the wife, the husband was no longer obligated for her support. . . . The 1951 Legislature amended section 139 so as to provide that unless the parties otherwise agree in writing, the obligation of any party in any decree, judgment, or order for the support and maintenance of the other party shall terminate upon the death of the obligor or the remarriage of the obligee. . . . Inasmuch as the amendment is specific to the effect that *'Except as otherwise agreed by the parties in writing'* the obligation of the husband shall cease upon his death or remarriage of the wife we must hold that since neither the agreement nor the decree here provided that the monthly support payments were to continue beyond the death of the obligor or the remarriage of the obligee plaintiff may not prevail except for the month which was due and owing prior to decedent's death. The agreement was executed subsequent to the 1951 amendment and the parties and their attorneys are presumed to know the law applicable to such property settlement agreements. It would appear that had the parties intended that Mrs. Hilton was to receive a certain sum of money without regard to her remarriage or the obligor's death it would have been a simple matter to make their intentions known in the property settlement agreement. In view of the language of the amendment that 'except as otherwise agreed in writing' the payments for support and maintenance terminate upon the death of the obligor or remarriage of the wife we are of the opinion that such payments terminated upon the death of the obligor. We hold, therefore, that the 1951 amendment to section 139 is applicable whether or not the property settlement agreement is integrated and inseverable. In other words, if monthly payments are provided for support and maintenance or alimony such payments will cease by force of the language of section 139 of the Civil Code unless the parties agree in writing that the payments are to continue despite the remarriage of the wife or the death of the husband."

In the present case the appellant (wife) asserts in effect that the part of the agreement setting forth the property agreement and the part thereof respecting the payment of alimony are not in any degree dependent upon each other. In other words, it appears that appellant's position is that the parties did not make an integrated property settlement agreement. That is a proper interpretation of the agreement. Appellant asserts further that the amendment of said section 139 did nothing other than to place in statutory form that which had been the law, as stated in decisions, before the amendment. Before the amendment, if the obligation to provide support for a wife, as incorporated in a divorce judgment, was not a part of an integrated property settlement agreement, the obligation always terminated upon the death of the husband. The amendment provides that the obligation of any party in a judgment or order for support of the other party terminates upon the death of the obligor, except as otherwise agreed by the parties in writing. It thus appears that the amendment retained the existing law with respect to nonintegrated property settlement agreements but added thereto a provision to the effect that if the parties intended that such an obligation should not terminate (according to existing law) upon death of the obligor, the parties should agree in writing that the obligation would not terminate upon death of the obligor. As above shown, it was held in the *Hilton* v. *McNitt* case that, under the amendment, monthly payments for alimony cease by force of the language of the amendment "unless the parties agree in writing that the payments are to continue despite the remarriage of the wife or the death of the husband." In the present case the agreement was merged in the interlocutory judgment and thereupon the agreement was superseded by the judgment, and the value then attaching to the agreement was only historical (see *Broome* v. *Broome,* 104 Cal.App.2d 148 [231 P.2d 171]) and as a reference in determining whether the parties had agreed in writing as required by the amendment.

As above indicated, the obligation herein to pay alimony was not based upon an integrated property settlement agreement. The obligation grew out of the marital relationship. Without the amendment of said section 139, such an obligation would have terminated upon the death of the husband. It is implicit in the amendment that in order to prevent termination of such an obligation upon the death of the obligor, it is

necessary that the parties agree in writing that the obligation should continue beyond the date of death of the obligor.

The order and judgment are affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 1, 1962. Traynor, J., Peters, J., and Dooling, J., were of the opinion that the petition should be granted.