[Civ. No. 23377. First Dist., Div. Two. Feb. 20, 1967.]

RUBIN LEWIS, Individually and as Trustee, etc., Cross-complainant and Appellant, v. TILLIE O'BRIEN, Individually and as Administratrix, etc., Cross-defendant and Respondent.

Howell, Elson & Grogan, Fred K. Howell, Jr., and Michael E. C. Moss for Cross-complainant and Appellant.

Stuhr & Martin and Michael R. Farrah for Cross-defendant and Respondent.

AGEE, Acting P. J.—On March 4, 1965 judgment was entered in favor of Rubin Lewis, as trustee, and against Tillie O'Brien, *individually*, for $4,000 and against her, *as administratrix* of her father's estate, for $2,000.

Tillie's father had died during the pendency of the action and Tillie was appointed administratrix of his estate on the morning of trial, solely for the purpose of presenting a defense on his behalf. Actually, he left no estate.

On April 29, 1965 Tillie deposited $4,689.47 of her own funds in the Hibernia Bank to the credit of Rubin, her purpose being to satisfy the judgment rendered against her individually, plus costs and interest.

The amount required to satisfy the judgment against Tillie individually was only $4,431.34 but her attorney explained that the overpayment was due to a miscalculation of the interest.

Rubin applied the amount deposited as follows: $2,409.40 was used to satisfy the judgment against the *estate* of Tillie's father, plus interest thereon of $21.95, plus joint costs of suit of $387.45. The balance of the deposit was applied to the principal and interest due on the individual judgment against Tillie, leaving a balance due thereon, according to Rubin's contention, of $1,763.53 as of April 30, 1965.

On May 19, 1965 Tillie filed a motion to compel Rubin to execute an acknowledgment of satisfaction of the judgment against her individually. On August 16, 1965 an order was made granting the motion. This appeal is by Rubin from that order.[1]

Appellant's position is as follows: when respondent made the bank deposit on April 29, 1965 she gave no instructions to the bank as to how the funds were to be applied; appellant's attorney received notice of the deposit from the bank on April

---

[1] The facts before the court were presented by the declarations of Tillie, Rubin, and Rubin's attorney; any conflicts therein are resolved by us in support of the order appealed from.

30 and on that same day allocated the funds as stated above; appellant's attorney notified respondent's attorney by letter mailed April 30 of this allocation; a letter from respondent to appellant's attorney, although dated April 29, was mailed on April 30 and received in the attorney's office on May 1; this letter stated that the deposit was for the payment of the judgment, costs and interest on "the judgment against me individually" and that "I have made this deposit because of your refusal to accept the amount of judgment against me individually as satisfaction of the judgment against me individually"; on May 6, in response to a letter from respondent's attorney requesting return of the overpayment due to "a bank error" and the application of the balance in accordance with respondent's letter of April 29, appellant's attorney replied that he refused such request because "Mrs. O'Brien's letter was not sent simultaneously with the payment of the moneys represented by the bank account."

Appellant relies upon Civil Code section 1479, which provides in pertinent part: "Where a debtor under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

"One.—If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied.

"Two.—If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance; ..."

The disposition of this controversy depends upon the applicability of the words, "under several obligations to another." As appellant frankly acknowledges, "If Tillie O'Brien as administratrix of a decedent's estate was not the 'debtor' of Rubin Lewis, then she was not 'a debtor under several obligations to another,' and Civil Code Section 1479 does not apply."

As will be seen hereafter, the debt of respondent *as administratrix* has not as yet arisen. She has not yet become "a debtor under several obligations" to respondent.

Upon the death of respondent's father during the pendency of the action, Probate Code section 709 became applicable. It provides in part: "If an action is pending against the decedent at the time of his death, the plaintiff must in like

manner file his claim with the clerk or present it to the executor or administrator for allowance or rejection, authenticated as required in other cases; and no recovery shall be had against decedent's estate in the action unless proof is made of such filing or presentation; . . ."

If the personal representative is substituted as a party to the action, as was done in the instant case, the requirements of section 709 concerning presentation of claims is satisfied. (*Pelser* v. *Pelser* (1960) 177 Cal.App.2d 228, 231 [2 Cal.Rptr. 259].)

However, substitution of the personal representative is solely to allow the claimant to proceed against the estate of the deceased defendant; for "the action does not involve any personal liability of the party sued. The relief is sought against the decedent's estate; and any judgment [obtained] . . . as the result of the action can go no further than to direct that the claim be paid in the course of administration, out of the assets of the estate (Prob. Code, § 730); no judgment can be rendered against the representative *in personam* (11B Cal. Jur. p. 342)." (*Vickerson* v. *Wehr* (1941) 42 Cal.App.2d 678, 681-682 [109 P.2d 743].)

Section 730 of the Probate Code provides: "A judgment rendered against an executor or administrator, upon any claim for money, against the estate of his testator or intestate, when it comes final, conclusively establishes the validity of the claim for the amount of the judgment; *and the judgment must be that the executor or administrator pay, in due course of administration, the amount ascertained to be due. . . .* No execution shall issue upon the judgment, nor shall it create any lien upon the property of the estate, or give the judgment creditor any priority of payment." (Italics supplied.)

This section appears to place all claims on a parity, regardless of whether the personal representative and the court acknowledge the claim without objection or whether they reject it and force the claimant to institute suit. In either case, the claim is only payable "in due course of administration."[2]

The general rules for payment of claims in such "due course of administration" indicate that no obligation to pay arises until the probate court enters an order directing the personal representative to pay. Until that time, the judgment

---

[2]The only advantage of a creditor with a judgment against the personal representative over one who has had his claim simply approved is that no one may challenge either the claim or its amount at the final

against the personal representative does not have the dignity of an *absolute* judgment. (*Hilton* v. *McNitt* (1957) 49 Cal.2d 79, 83 [315 P.2d 1].) It has happened that a claim has been allowed, yet erroneously omitted from the final accounting and order to pay creditors. Thereupon, absent an appeal from such order, the claim is lost. (*Federal Farm Mortg. Corp.* v. *Sandberg* (1950) 35 Cal.2d 1 [215 P.2d 721].)

Section 951 of the Probate Code provides: "As soon as he has sufficient funds in his hands, after retaining sufficient to pay the expenses of administration, the executor or administrator must pay the funeral expenses, the expenses of the last illness, the family allowance, and wage claims to the extent of nine hundred dollars ($900) of each employee of decedent for work done or personal services rendered within 90 days prior to the death of the employer; *but he is not obliged to pay any other debt or any legacy until, as prescribed in this article, the payment has been ordered by the court.*" (Italics supplied.)

Section 952 of the Probate Code provides: "Upon the settlement of any account of the executor or administrator after the time to file or present claims has expired, *the court shall order the payment of the debts, as the circumstances of the estate permit.* . . ." (Italics supplied.)

Not until the time of the order to pay does the *personal* liability of the executor or administrator arise under section 954 of the Probate Code, allowing execution against him as in any civil proceeding. (See *Levy* v. *National Auto. & Cas. Ins. Co.* (1948) 86 Cal.App.2d 632 [195 P.2d 51].)

 In the instant case, the record does not indicate that any court has ordered payment of this claim against the estate of respondent's intestate. As seen above, under the Probate Code, the judgment alone does not impose any obligation on respondent as administratrix. Thus, at the time respondent deposited the $4,689.47 with the Hibernia Bank, only her obligation as an individual existed. Appellant had no legal alternative but to apply the money towards its satisfaction.

The order appealed from is affirmed.

Taylor, J., and Bray, J.,* concurred.

<hr>

accounting. (Prob. Code, § 713; see *Grisinger* v. *Shaeffer* (1938) 25 Cal. App.2d 5, 8-9 [76 P.2d 149]; Perry Evans, *Comments on the Probate Code of California* (1931) 19 Cal.L.Rev. 602, 604.)

Also, of course, all claims, whether by acknowledgment or judgment, are still subject to section 950 of the Probate Code concerning order of payment.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.