[Civ. No. 25287. Second Dist., Div. Two. Oct. 16, 1961.]

ELSIE B. HAWKINS, Appellant, v. MAMIE E. McLAUGH-
LIN, as Executrix, etc., Respondent.

320

Schramm, Raddue & Seed, Edward W. Schramm and Dale E. Hanst for Appellant.

John T. Rickard for Respondent.

ASHBURN, J.—This is an action by a divorced wife against the executrix of her former husband's estate to enforce her claim to support money. A general demurrer to each of two alleged causes of action was sustained. Plaintiff chose to stand upon her complaint, and appeals from a judgment of dismissal.

The first count alleges the execution of a property settlement agreement on June 1, 1945, by plaintiff and Ernest C. N. Hawkins, then husband and wife, in which it was provided in paragraph 5 that the husband would pay to plaintiff "the sum of Fifty ($50.00) Dollars per month as and for her support and maintenance, payable monthly on the first day of each month beginning on the first day of July, 1945, and continuing in monthly instalments on the first day of each and every month thereafter *until death or remarriage of second party* [the wife]." (Emphasis added.)

It is alleged that plaintiff has fully performed her part of the agreement; that "although plaintiff on the 17th day of October, 1945 obtained an Interlocutory Decree of Divorce from said decedent, and final judgment thereon was entered on the 25th day of October, 1946, plaintiff has not remarried"; that Ernest C. N. Hawkins died on or about June 22, 1959, and that the defendant Mamie E. McLaughlin is the duly

qualified and acting executrix of his estate; that the monthly payment due on June 1, 1959, has not been paid nor has any payment been made for months subsequent thereto; that a creditor's claim for "funds due from and after July 1, 1959 at the rate of $50 per month (including the payment due on July 1, 1959) until the claimant's death or remarriage," filed seasonably and in accordance with the provisions of Probate Code, section 707, was rejected by the defendant on December 10, 1959. This action upon the rejected claim was filed on February 24, 1960. A second cause of action seeks declaratory relief based upon the facts above summarized. A copy of the property settlement agreement is attached to the complaint.

Respondent's argument is twofold: (1) that, as a matter of law, the agreement is not an integrated one, that the provision for appellant's support is alimony and severable from the property disposition clauses, and would therefore terminate upon the husband's death; and (2) that by necessary implication the parties, in paragraph 15 of the agreement, have provided that the monthly payments should not survive the death of the husband. Paragraph 15 provides: "And it is specifically agreed by the parties hereto that the second party [the wife] shall not file any claim in the estate of the other party in the event of death of the other party unless said first party has failed and neglected to carry out the covenants, provisions and conditions of this agreement on his part to be performed." Respondent's reasoning is that the filing of a creditor's claim is required as a basis for collection of a continuing obligation of support from the estate of the divorced husband, and that paragraph 15 denies plaintiff the right to file such a claim, thus "by force and necessity it denies that any obligation to continue support payments to her shall survive his death."

Appellant contends that the agreement is an integrated one and is controlled by the rule in effect prior to the 1951 amendment to Civil Code, section 139, as stated in *Anderson* v. *Mart*, 47 Cal.2d 274, 280 [303 P.2d 539], which held that a provision for support in a divorce decree, based upon an integrated property settlement agreement, "did not terminate on the death of the husband or the remarriage of the wife unless the agreement so provided."[1] Appellant further con-

[1] In 1951 § 139 was amended to provide that "*Except as otherwise agreed by the parties in writing,* the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon

tends that the trial court could not, as a matter of law, properly construe paragraph 15 of the agreement to accord with respondent's contention.

If this case involved a divorce decree based upon an integrated agreement, clearly it would be governed by *Anderson* v. *Mart, supra,* 47 Cal.2d 274. (See also *Parker* v. *Parker,* 193 Cal. 478, 480-481 [255 P. 447] ; *Estate of Mesmer,* 94 Cal.App. 97, 102-103 [270 P. 732] ; *Hamilton* v. *Hamilton,* 94 Cal.App. 2d 293, 298 [210 P.2d 750] ; 1 Cal.Jur., 10-Yr. Supp., § 89a, p. 245.)

However, the terms of neither the interlocutory decree nor the final decree of divorce are disclosed by the pleadings, and there is no indication or contention that the agreement was incorporated in any manner in the decree, or that there was a decree ordering support payments. Plaintiff's action is based solely upon the property settlement agreement.

██ *Miller* v. *Superior Court,* 9 Cal.2d 733, 737 [72 P.2d 868] : "There are certain generally settled distinctions between alimony awarded by the court and payments due by virtue of property settlement between the parties. An award of alimony is subject to modification by the court to meet changed conditions. [Citations.] A property agreement, although approved by the court in the divorce action, is not thereafter subject to modification by action of the court. [Citations.] ██ The right to unaccrued alimony stops with the death of the party directed to pay. [Citations.] The parties may by contract provide for monthly payments during the lifetime of the wife, and in such event she has a claim against the husband's estate for payments due after his death." The court in *Hilton* v. *McNitt, supra,* 49 Cal.2d 79 (footnote 1) observes that section 139, as it read prior to the amendment (quoting from *Taliaferro* v. *Taliaferro,* 125 Cal.App.2d 419, 424 [270 P.2d 1036]), " 'places no limitations upon the rights of husband and wife to contract with each other as they please, and if the husband for adequate consideration contracts to give support beyond that for which he is strictly obligated, he has the right to thus freely contract with his wife. This is not being imposed upon him by the power of the court, but is something which he undertakes voluntarily, and in the present case, with advice of counsel.' " (P. 82.)

the remarriage of the other party." (Emphasis added.) This section was construed in *Hilton* v. *McNitt,* 49 Cal.2d 79 [315 P.2d 1]. But we need not determine the effect of this amendment, if any, upon a situation such as is presented here since the instant agreement was executed in 1945, prior to the amendment.

We deem it unnecessary to determine whether the agreement is an integrated one. The case of *Anthony* v. *Anthony,* 94 Cal.App.2d 507 [211 P.2d 331], is controlling. It arose upon a factual situation closely parallel to that presented at bar. The appellant-administratrix therein contended that the periodic payments provided for in the agreement were intended by the parties to be in the nature of alimony and not as a division of property and therefore terminated on the death of decedent. The court states, pages 510-511: "All of the cases cited by appellant in support of her contention are cases in which the divorce decree referred to a property settlement agreement or to a stipulation by the parties as to property division and alimony or the divorce decree alone made such provision. Inasmuch as the present action is confined to the contract alone, cases other than those involving in essence modification of divorce decrees must be considered.

" 'Notwithstanding the contrariety of opinion as to whether, under provisions in divorce decrees for regular periodic payments of alimony, the obligations thereunder survive the death of the husband and become binding on his estate, it is generally recognized that the husband may, under a separation agreement, provide for periodic payments during the life of the wife so as to make such payments a continuing charge on his estate after his death.' (17 Am.Jur. 550.)

"While it is true no intent is specifically expressed in the agreement that the periodic payments were to be binding on the husband's estate, on the other hand the condition subsequent of the respondent's remarriage could not be held to have been contemplated as an event certain to happen before the death of decedent.

"We are satisfied that the agreement here in question was a binding executed contract between the parties. By it they settled their property interest upon a basis agreeable to both. It bears no relation to alimony and is to be construed according to the ordinary rules of contracts. In our opinion it continued to be a legal charge against the estate the same as any other unfilled contractual obligation of decedent at the time of death." And at pages 512-513: "Although an order of court for payment of alimony terminates upon the death of either of the parties, such rule is not applicable to an obligation under a contract, where performance consists simply of payment of money and where the personal representatives can sufficiently perform all the deceased could have performed.

In such cases, the personal representative of the decedent is bound to fulfill and complete such a contract.''

█ This case is in accord with the general rule concerning actions upon a property settlement agreement, viz.: In the absence of other provisions clearly indicating a contrary intent, a provision in a property settlement agreement to make support payments to the wife as long as she lives or until she remarries creates a legal liability which continues after the death of the husband and is a charge against his estate. (See cases collected, 100 A.L.R. 500; 75 A.L.R.2d 1086, 1091.)

█ The instant agreement was one executed pursuant to Civil Code, sections 158 and 159, and does not require the approval of a divorce court to render it effective. (*Anthony* v. *Anthony, supra,* p. 511.)

█ The instant agreement contains no express provision that the support payments are to terminate upon the husband's death. Respondent claims, however, that ''[i]t is clear from a reading of the entire agreement, and particularly from the third Whereas clause and paragraphs 2, 3, 5, 7, 8 and 15 thereof,[2] that the parties intended and provided that the periodic

[2]The third ''Whereas'' clause: ''Whereas, the said parties hereto desire to effect an arrangement and settlement whereby at the date of the death of either, the survivor shall become the sole and exclusive owner of certain personal property and each shall have the right of beneficiary under two certain retirement annuity policies.''

.Pursuant thereto, *paragraph 7* provides that each of the parties shall ''retain and hold'' certain certificates of stock and shall receive ''all dividends, profits and interest and all rights thereunder'' and that the same shall ''be treated as the sole and separate property'' of the holder thereof; provided, however, that the said shares and the certificates evidencing same shall remain in and stand in the names of the parties as joint tenants with the sole right of survivorship. *Paragraph 8* makes a division between the parties of certain annuity policies, each party agreeing to retain the other as the sole beneficiary under the policies of that party.

*Paragraph 2:* ''That said parties hereto hereby waive any and all rights to the estate of the other left at his or her death, and quit claim any and all right to share in the estate of the other, by the laws of succession, and said parties hereby release one to the other all right to be administrator or administratrix, or executor or executrix of the estate of the other, and hereby release and waive all rights to inherit under any will of the other and each of said parties hereby waive any and all right of homestead in the real property now owned or hereafter acquired by either of said parties, and said parties hereby waive any and all right to the estate or any interest in the estate of the other for family allowance by way of inheritance, and each party herein shall have all the rights of a single person.''

*Paragraph 3:* ''That each of the parties shall have an immediate right to dispose of or bequeath by will his or her respective interests in and to any and all property belonging to him or her from and after the date hereof, except as otherwise provided by this agreement as to certain capital stock and certain retirement annuity policies hereinafter set forth, designated and described in this agreement.''

support payments were to terminate upon the death of the husband.'' Particular reliance is placed upon paragraph 15. We find no such clearly implied intention in any of these provisions.

Paragraphs 7 and 8 merely divide certain property between the parties in a mutually satisfactory manner, with like benefits accruing to each party upon the death of the other. There is no merit to the argument that the benefits which would accrue to the wife thereunder upon the death of the husband were intended to be ''in lieu'' of the support benefits of paragraph 5.

The agreement must be construed as a whole. In paragraph 5 the husband ''agrees in consideration of the promises and mutual covenants and agreements herein contained'' to make the $50 monthly payments to the wife until her ''death or remarriage.'' The right to these payments and other benefits conferred upon the wife under the agreement constituted the moving consideration for the relinquishment by her of her marital rights in the husband's estate and her waiver of any right to file a claim against the estate,—— ''unless said first party [the husband] has failed and neglected to carry out the covenants, provisions and conditions of this agreement on his part to be performed.''

In *Anderson* v. *Mart, supra,* 47 Cal.2d 274, it was contended that the provision in the fourth paragraph that ''each party does hereby waive and quitclaim any right to share in the estate of the other party, either under a Will or by the laws of succession, or by family allowance, *or otherwise''* established that the payments were to terminate on decedent's death. (Emphasis added.) The court states, pages 281-282: ''It is . . . obvious that the fourth paragraph refers only to any rights to share in the estate not otherwise provided for in the agreement. It is similar in its broad language to the provisions of the second and third paragraphs in which each of the parties waived all rights in any of the property assigned to the other and any property to be thereafter acquired by the other. Taken together these provisions make clear that neither party should have any rights in the property or the estate of the other growing out of the marital relationship. The agreement was executed to settle and dispose of those rights in exchange for those provided in the agreement, and manifestly the agreement would be self-stultifying if the mutual relinquishment of marital rights was so broad as to prevent the enforcement of the contractual obligations given in consideration therefor.

Accordingly, since it is clear that none of these provisions was intended to prevent plaintiff from enforcing her rights under the agreement and since paragraph four makes no distinction between rights accruing before or after decedent's death, it has no bearing on the applicability of the rule that payments agreed to as an inseparable part of a property settlement agreement do not terminate on the death of the husband.''

This same reasoning applies to paragraphs 2 and 3 of the instant agreement, as well as to the provisions of paragraph 15 which can be construed to refer to a claim other than one arising out of the contract. As pointed out in *Anderson, supra,* the provision in question ''makes no distinction between rights accruing before or after decedent's death.''

Respondent would construe the closing clause of paragraph 15 to read, ''unless first party has failed and neglected [*in his lifetime*] to carry out the covenants, provisions and conditions of this agreement on his part to be performed.'' Appellant claims this clause means ''first party [*or his estate*]''. The agreement specifically provides that ''its provisions, terms and conditions shall be binding upon and shall inure to the parties hereto, the heirs, administrators, executors and assigns.'' Since this substitution of the ''heirs, administrators, executors and assigns'' of the husband constitutes a provision for a substitute performer of the contract, appellant's position as to the meaning of the phrase is not unreasonable. At least there is an uncertainty, from the language used, as to the intent of the parties. It cannot be said as a matter of law that paragraph 15 contains a limitation, express or clearly implied, upon the express provisions of paragraph 5 which give to plaintiff the right to receive the monthly payments so long as she lives and is unmarried.

██ ''Whether a contract is in any of its terms or provisions ambiguous or uncertain is a matter of determination in the first instance by the trial court. If it is found so to be, it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.* Until it is so construed by the trial court with this opportunity afforded to the parties and the accuracy of the determination of the trial court is directly questioned on appeal here, we do not think we should in the first instance undertake to construe it and have our determination of the matter operate as the law of the case on a new trial.'' (Empha-

sis added.) (*Barlow* v. *Frink*, 171 Cal. 165, 172-173 [152 P. 290].) See also *Flynn* v. *Flynn*, 103 Cal.App.2d 91, 95-96 [229 P.2d 5]; *Taliaferro* v. *Taliaferro*, 125 Cal.App.2d 419, 428 [270 P.2d 1036]; *Walsh* v. *Walsh*, 18 Cal.2d 439, 443-444 [116 P.2d 62]; *Wachs* v. *Wachs*, 11 Cal.2d 322, 325 [79 P.2d 1085].

We have no way of knowing upon what basis the trial court sustained the demurrer, i.e., whether it was upon the ground that a provision in a property settlement agreement for the support of the wife terminates upon the death of the husband, or that it construed the agreement to contain an implied provision for such termination. If it was upon the former ground, it was erroneous, as above demonstrated. If the demurrer was sustained upon the latter theory it was erroneous because the contract need not, as a matter of law, be so construed. ■ The applicable principle is stated by the court in *Richards* v. *Farmers' etc. Bank*, 7 Cal.App. 387, 395 [94 P. 393]: ''We think that where a pleaded instrument is, because of the uncertainty of the language in which it is expressed, susceptible of more than one construction as to its nature or as to the purpose intended by the parties to be attained by it, the construction of the party pleading it should be accepted, if such construction be reasonable, where, as here, the essential facts stated in the complaint are, *at least pro re nata*, admitted to be true.''

■ Count I of the complaint herein is based upon the rejected claim for ''funds due from and after July 1, 1959 at the rate of $50 per month . . . until the claimant's death or remarriage.'' Count II alleges ''That an actual legal controversy exists relating to the legal rights and duties of the parties hereto under the terms and provisions of the said Property Settlement Agreement in that plaintiff asserts that she is entitled to receive $50.00 per month from the 1st day of July 1959, until she dies or remarries, . . . from the defendant as Executrix of the Estate of the said decedent . . . on the other hand, defendant denies that plaintiff is entitled to any relief under the terms and provisions of said Property Settlement Agreement.'' If the contract can reasonably be construed in accordance with plaintiff's theory that she is so entitled to these payments from the estate, ''such must be accepted as the correct theory under the attack of the demurrer.'' (*Richards* v. *Farmers' etc. Bank, supra*, p. 396.) Since the contract is reasonably subject to such interpretation, Count I states a cause of action.

■ Likewise, Count II states a cause of action for declaratory relief. In this connection, respondent relies upon cases dealing primarily with complaints containing a common count and a detailed factual count and holding that the former must stand or fall with the latter where general demurrer is interposed (e.g., *Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484, 489 [110 P.2d 396]; *Neal* v. *Bank of America*, 93 Cal.App.2d 678, 681 [209 P.2d 825]; *Rose* v. *Ames*, 53 Cal.App.2d 583, 589 [128 P.2d 65]; *Hays* v. *Temple*, 23 Cal.App.2d 690, 695 [73 P.2d 1248]). But that rule is not applicable to a declaratory relief count. The matter is explained in *Western Title Ins. etc. Co.* v. *Bartolacelli*, 124 Cal.App.2d 690, 694 [269 P.2d 165], which involved a declaratory relief count: "They argue that it is the law that, where the plaintiff alleges in one count all of the underlying facts, and that count is subject to a demurrer, the other counts of the complaint based on the same facts, even though such count or counts standing alone would be immune from attack, are likewise subject to demurrer. . . . All but the last of these cases involve complaints where in one count all of the facts are alleged, and then a common count is pleaded. In that event if the fact count is demurrable, so is the cause of action predicated upon the common count. But that rule is limited to pleadings involving a common count. The general well settled rule is that if any count of a multicount complaint states a cause of action, it is error to sustain a demurrer to the complaint as a whole. Each count stands or falls upon its own allegations. [Citations.] The rule based on the common count exception is predicated on the anomalous nature of the common count in our system of pleading. The common count states simply a conclusion of law and discloses none of the facts upon which it is predicated. . . . The exception involving a common count cannot be extended to cases where any one count pleads facts alleging a good cause of action. That is this case."

Other cases which approach the matter from a different direction reach the same conclusion. In *Photochart* v. *Del Riccio*, 94 Cal.App.2d 315 [210 P.2d 547], the first cause of action sounded in declaratory relief and the second in damages for breach of contract. A general demurrer to both causes of action was sustained without leave. The court held that the second count did not state a cause of action but that it was error to sustain the demurrer as to the declaratory count. ■ At pages 318-319 it said: "An entirely different situation is presented by the ruling on plaintiff's first cause of

action. The demurrer was general only, and by the judgment it was merely adjudged that, the demurrer having been sustained, plaintiff take nothing by its action. The effect of such a judgment is only to deny the relief prayed for, that is, to deny declaratory relief. The fact that a declaratory judgment would or might be adverse to the plaintiff's contentions is not a ground for denying declaratory relief. . . .

 "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court. (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].) As heretofore stated, the court should not dispose of the case on demurrer merely because the plaintiff is not entitled to a favorable declaration. . . . 'To hold that a plaintiff on the wrong side of a controversy is not entitled to the security and relief against uncertainty which a declaratory judgment affords would require us to read into the statute a limitation not there present. . . .'

"This being the rule, the only ground upon which the demurrer to the first cause of action could have been properly sustained would be that no cause of action for *declaratory relief,* was set forth, that is, that no 'justiciable controversy' was shown."

In *Loupias* v. *Rosen,* 102 Cal.App.2d 781 [228 P.2d 611], the complaint sought in a first count dissolution of a partnership and an accounting, in the second declaratory relief. Demurrer having been sustained without leave, the court affirmed as to the first count and reversed as to the second with leave to amend. At page 784: "In his second cause of action plaintiff seeks declaratory relief on the same facts pleaded in the first cause. . . . A complaint for declaratory relief does not need to plead facts showing plaintiff is entitled to relief. (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]. There the court said (p. 730): 'Section 1060 of the Code of Civil Procedure provides that a party may bring an action for "a declaration of his rights and duties in the premises" and that the "declaration may be either affirmative or negative in form and effect." It contains no suggestion that the pleader must allege facts entitling him to a favorable declaration. [Citations.]' Thus a party may sue for a 'declaratory judgment' as distinguished from declaratory 'relief' though his pleading shows affirmatively that he is not entitled

to any relief under the contract pleaded.'' See also *Lord* v. *Garland,* 27 Cal.2d 840, 850 [168 P.2d 5] ; *Kessloff* v. *Pearson,* 37 Cal.2d 609, 614 [233 P.2d 899].

We hold that each count of the instant complaint is good against general demurrer.

The judgment is reversed with directions to the superior court to overrule the demurrer.

Fox, P. J., and Herndon, J., concurred.