[L.A. No. 30829. Mar. 23, 1978.]

BEN C. GONZALES, Plaintiff and Respondent, v.
R. J. NOVICK CONSTRUCTION COMPANY, INC., Defendant,
Cross-complainant and Appellant;
VIENNA STONECRAFT, INC., Cross-defendant and Appellant.

800

**COUNSEL**

Clausen, Gilliland, Koelsche, Roberson & Moser, William N. Roberson, Edward L. Lascher, Wendy C. Wilner and Richard C. Gilman for Defendant, Cross-complainant and Appellant.

Kean & Engle and Joseph A. Kean for Cross-defendant and Appellant.

Vogt & Woloz and James D. Vogt for Plaintiff and Respondent.

William P. Camusi, Wylie A. Aitken and Lawrence R. Booth as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**MANUEL, J.**—Cross-defendant Vienna Stonecraft, Inc., appeals from an adverse judgment on a cross-complaint for indemnity.[1] We affirm.

Plaintiff Ben C. Gonzales brought the instant action against R. J. Novick Construction Company, Inc. (Novick), a general contractor, and others seeking damages for personal injuries suffered by him when he fell from a scaffold while acting in the course and scope of his employment as a brick tender for Vienna Stonecraft, Inc. (Vienna), a subcontractor of Novick. Novick cross-complained against Vienna for indemnity. The trial was trifurcated, the issue of Novick's liability to plaintiff to be tried before a jury, the issue of Vienna's liability to Novick

---

[1] Defendant and cross-complainant R. J. Novick Construction Company, Inc. has filed a cross-appeal pursuant to rule 3(c) of the California Rules of Court. For reasons to appear below, this cross-appeal must be dismissed.

on the cross-complaint for indemnity to be tried before the court sitting without a jury, and the issue of damages to be tried before a jury. At the conclusion of the proceedings before the jury on the issue of Novick's liability to plaintiff a verdict was returned in favor of plaintiff. The court with the consent of the parties[2] then submitted three special interrogatories to the jury to assist in its determination of the issue of liability on the cross-complaint for indemnity. The jury, responding to these special interrogatories, concluded that Novick was "negligent so as to proximately cause plaintiff's accident"; that Vienna was "negligent so as to proximately cause plaintiff's accident"; and that plaintiff was not contributorily negligent. The court having indicated to the parties its intention to rule in favor of Novick and against Vienna on the cross-complaint for indemnity, proceedings before the jury on the issue of the measure of damages ensued, at the conclusion of which the jury returned a verdict against Novick in the amount of $111,500. The parties then stipulated to a set-off in the amount of $12,578 on account of workers' compensation benefits previously paid. Judgment was entered (1) on the complaint in favor of plaintiff and against Novick for the sum of $98,922 plus interest and costs, and (2) on the cross-complaint in favor of Novick and against Vienna in the same amount.

██ Vienna appeals from the judgment on the cross-complaint.[3] Novick cross-appeals from the judgment on the complaint,[4] stating that

---

[2]The court had previously solicited suggested interrogatories from the parties to the cross-complaint. Its decision to put only the three indicated interrogatories to the jury was not, however, opposed by either of the parties.

At the conclusion of the later proceedings before the jury on the issue of damages the court proposed to submit an additional interrogatory asking the jury to detail the "act or acts, omission or omissions, that you feel constituted the negligence of the defendant [Novick] which was a proximate cause of plaintiff's accident." Upon objection by Novick, however, the court announced that it had been "persuaded by [Novick's counsel] not to submit any further written interrogatories to the jurors." The indicated interrogatory was accordingly not submitted to the jury.

[3]Vienna's notice of appeal, filed on March 17, 1975, was addressed solely to the clerk of the court and to "cross-complainant, R. J. Novick Construction Co., Inc." and its attorneys. It stated that Vienna appealed "from that certain judgment entered on January 13, 1975 . . . in favor of R. J. Novick Construction Co., Inc., and against cross-defendant, Vienna Stonecraft, Inc., and from the whole thereof." In designating the record on appeal it requested the preparation of a clerk's transcript containing the following: "Copy of the Cross-Complaint. Copy of the Answer to the Cross-Complaint. Copy of jury instructions. Copy of Special Interrogatories to the jury. Jury verdict on liability and jury answers to Special Interrogatories submitted to the jury. Copy of Findings of Fact and Conclusions of Law together with Judgment on the Cross-Complaint. Copy of Cross-Complaint and Motion for New Trial. Copy of all exhibits introduced by *either party* on the issues of liability and copy of all exhibits introduced by cross-complainant and cross-defendant." (Italics added.)

[4]Novick's "Notice of Cross-Appeal (Rule 3(c))" was addressed to the clerk of the court and to "all parties and their attorneys of record." It stated that "defendant R. J. Novick

this cross-appeal should be deemed abandoned by it if the judgment be affirmed insofar as it relates to the cross-complaint. For reasons to appear below, we conclude that the portion of the judgment appealed from must be affirmed and the cross-appeal dismissed as abandoned.

It has been suggested that we, in spite of the clear purport of Vienna's notice of appeal and Novick's stated intention to abandon its appeal in the event of our affirmance of the judgment on the cross-complaint, should nevertheless address the issues raised by the cross-appeal before considering the issues raised by Vienna's appeal.[5] This is necessary, we are advised, because the underlying issue of Novick's negligence is the basis of the entire proceeding, and a finding of prejudicial error in that respect would render a consideration of all other issues unnecessary. Moreover, it is urged, considerations of fundamental justice should not allow an erroneous judgment in favor of plaintiff and against Novick to stand simply because Novick can in turn recover from Vienna.

We decline the indicated invitation. Vienna, despite the fact that it was clearly a "party aggrieved" by the judgment in all its aspects and therefore entitled to appeal from it in its entirety (Code Civ. Proc., § 902; see generally, 6 Witkin, Cal. Procedure (2d ed. 1971) § 118, p. 4117, and cases there cited), took advantage of its right under the law of this state to limit its appeal to a particular portion of the judgment. (See rule 1(a), Cal. Rules of Court; see generally Comment, *Partial Appeals* (1953) 41 Cal.L.Rev. 277.) This determination was reflected not only in the notice of appeal and the original designation of the appellate record (see fn. 3, *ante*) but also in Vienna's appellate briefs, which concerned themselves solely with issues of indemnity.[6] ■ The effect of proceeding in this fashion was clearly stated by us in the early case of *Whalen* v. *Smith* (1912) 163 Cal. 360 [125 P. 904]: "Ordinarily [an appeal from a specific portion of a judgment] would leave the parts not appealed from

---

Construction Company appeals . . . from the judgment entered herein in favor of plaintiff Ben C. Gonzales and against this appellant, and from the entirety thereof."

[5]The issues raised on Novick's cross-appeal relate to the propriety of certain instructions given by the trial court concerning the application of (1) the so-called "peculiar risk doctrine" (Rest. 2d Torts, §§ 413, 416) and (2) the provisions of the federal Occupational Safety and Health Act (29 U.S.C. § 652 et seq.)

[6]Only in its answer to plaintiff's petition for a hearing in this court, filed after the Court of Appeal had reversed the judgment in its entirety, did Vienna undertake to present any arguments relating to the question of Novick's liability to plaintiff, contenting itself at that point with an argument five pages in length urging the inapplicability of certain instructions given.

unaffected, and it would logically follow that such unaffected parts must be deemed final, being a final judgment of the facts and rights which they determine. The decisions are to the effect that upon such an appeal where the parts not appealed from are not so intimately connected with the part appealed from that a reversal of that part would require a reconsideration of the whole case in the court below, the court upon such partial appeal can inquire only with respect to the portion appealed from." (163 Cal. at pp. 362-363.) Thus, we concluded it is "the general principle that an appeal from a distinct and independent part of a judgment does not bring up the other parts for review in the appellate court, and that a reversal of the part appealed from does not affect the portions not dependent thereon, but that they will stand as final adjudications [.]" (*Id.*, at pp. 363-364.)

It is manifest that the foregoing principle, which has been a part of the law of this state at least since its elucidation in *Whalen* 65 years ago (see also *In re Burdick* (1896) 112 Cal. 387, 391 [44 P. 734]), enjoys continuing present vitality. (See, e.g., *In re Marriage of Wilson* (1974) 10 Cal.3d 851, 853 [112 Cal.Rptr. 405, 519 P.2d 165]; *People* v. *One 1953 Ford Victoria* (1957) 48 Cal.2d 595, 597 [311 P.2d 480]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 378 [295 P.2d 405]; *Harrold* v. *Harrold* (1954) 43 Cal.2d 77, 87 [271 P.2d 489] (Traynor, J., conc.); *Stein* v. *Hubbard* (1972) 25 Cal.App.3d 603, 606 [102 Cal.Rptr. 303]; *Rouse* v. *Underwood* (1966) 242 Cal.App.2d 316, 318 [51 Cal.Rptr. 437]; *Page* v. *Bakersfield Uniform etc. Co.* (1966) 239 Cal.App.2d 762, 768-769 [49 Cal.Rptr. 46]; *Hansen* v. *Hansen* (1965) 233 Cal.App.2d 575, 579-581 [43 Cal.Rptr. 729]; *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 471-474 [37 Cal.Rptr. 548].)

As the language of the principle in question indicates, however, an exception is made in cases involving judgments whose parts are not deemed to be severable. In such cases an appeal from a portion of the judgment brings up for review not only the portion appealed from but those other portions which are found to be "interdependent upon" it. ▪ Thus, as we said in what has come to be regarded as the leading case on the subject: "The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been

attacked. [Citations.] '[I]n order to be severable, and therefore [separately] appealable, any determination of the issues so settled by the judgment . . . must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed. . . . Perhaps another way of saying it would be that the judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as a result of an appeal cannot affect the determination of the remaining issues of the suit. . . .' [Citation.]" (*American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 217 [246 P.2d 935].)

We do not believe that this exception is applicable to the instant case. Although the matters of Novick's liability on the complaint for negligence and Vienna's liability on the cross-complaint for indemnity are linked in the sense that a positive determination on the former is a condition precedent to any determination on the latter—and although this relationship might require that a reversal of the judgment as to Novick's liability entail a reversal of the judgment on indemnity—a separate disposition of the judgment as to indemnity can have no effect on the underlying determination as to the indemnitee's liability to the injured plaintiff. Vienna, by limiting its appeal to the indemnity issues, effectively chose not to bring plaintiff into the appeal at all, contenting itself with a challenge to the trial court's determination as to who should pay the judgment. As we said in *American Enterprise, supra,* "where several persons are affected by a judgment, the reviewing court will make no determination detrimental to the rights of those who have not been brought into the appeal." (39 Cal.2d at p. 218.) Accordingly, in examining the merits of Vienna's appeal we shall not undertake to inquire into the validity of that portion of the judgment relating to Novick's liability to plaintiff.

Our conclusion on this point is not affected by the fact that Novick, by taking a protective cross-appeal, has effectively "brought [plaintiff] into the appeal" by naming him a cross-respondent. That cross-appeal, as we have noted, is conditional only, to be abandoned in the event of affirmance of that portion of the judgment appealed from by Vienna. We do not believe that Vienna, having limited its appeal in such a way as to exclude plaintiff as a respondent thereto, should be allowed to rely on protective action by the respondent it did name in order to justify an examination of issues which will not become relevant to the appellate proceedings unless it prevails on the issues it did raise.

We turn to the merits of Vienna's appeal.

■ It is first urged that the contractual provision upon which the claim of indemnity was based (which provision we set forth in its entirety in the margin[7]) was not sufficiently specific to satisfy the requirements of section 3864 of the Labor Code, and that therefore the claim must be disallowed.

Section 3864, enacted in 1959, provides as follows: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person [see Lab. Code, § 3852] results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury." ■ The history underlying the enactment was correctly explained in a recent Court of Appeal decision as follows: "Prior to 1959, an employer of an employee, injured as a result of the joint negligence of the employer and a third party, was subject to the doctrine of implied indemnity and, like any other joint tortfeasor, was required to indemnify the third party for any judgment recovered by the employee against the third party when the negligence of the employer was active and the negligence of the third party was passive. (See, e.g., *Aerojet General Corp.* v. *D. Zelinsky & Sons* (1967) 249 Cal.App.2d 604, 607 [57 Cal.Rptr. 701]; *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434, 440, 443-444 [328 P.2d 785].) However, in 1959 the California Legislature, to eliminate the dual insurance burden imposed upon the employers of this state by the workers' compensation law and the implied indemnity doctrine, enacted section 3864 of the California Labor Code. (*Val's Painting & Drywall,*

---

[7]The subcontract provided in relevant part: "SUB-CONTRACTOR FURTHER AGREES AS FOLLOWS: . . . 23. INSURANCE—To indemnify and save Owner, Architect, and Contractor harmless against all claims for damages to persons or to property growing out of the execution of the work, and at his own expense to defend any suit or action brought against Owner, Architect, or Contractor founded upon the claim of such damage. To procure and maintain, during the entire progress of the work, full and unlimited Workmen's Compensation and Employers' Liability Insurance, Public Liability and Property Damage Insurance in limits and with a carrier or carriers satisfactory to Contractor; to furnish Contractor with certificates of said insurance before commencing work hereunder, which shall provide that the policy shall not be cancelled or reduced in coverage until ten (10) days after written notice shall be given to Contractor of such cancellation or reduction in coverage. To insure his interest from loss to the premises resulting from fire, earth settlement, earthquake, theft, embezzlement, riot or any other cause whatsoever, and neither the Owner nor the Contractor will, under any circumstances, be liable or accountable to the Sub-Contractor for such loss."

*Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 584 [126 Cal.Rptr. 267]; *Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 713 [86 Cal.Rptr. 7].) Under this section the employer of an employee who is injured as the result of the joint negligence of the employer and a third party is no longer required to indemnify the third party in the absence of an express indemnification agreement. (*Aerojet General Corp.* v. *D. Zelinsky & Sons, supra,* 249 Cal.App.2d 604, 608; *S.F. Examiner Division* v. *Sweat* (1967) 248 Cal.App.2d 493, 497 [56 Cal.Rptr. 711]; *Progressive Trans. Co.* v. *Southern California Gas Co.* (1966) 241 Cal.App.2d 738, 742-743 [51 Cal.Rptr. 116]; *Western Gulf Oil Co.* v. *Oilwell Service Co.* (1963) 219 Cal.App.2d 235, 241 [33 Cal.Rptr. 20].) As the appellate court explained in *City of Sacramento* v. *Superior Court* (1962) 205 Cal.App.2d 398, 405 [23 Cal.Rptr. 43]: '. . . the Legislature met in 1959 and it is the theory of the authors of the article quoted above [Conley & Sayre, *Rights of Indemnity* (1961) 13 Hastings L.J. 214, 219-220, fn. 29] that "The California legislature felt that this double burden placed upon the employer was in contravention of the exclusive remedy theory of the [workers'] compensation statutes" and that the 1959 addition to the Labor Code under discussion was the result and that its effect was only to abolish "the right of indemnity by the third person against the injured employee's employer on the theory of implied contract. In order to recover in indemnity the third party must now rely on an *express* contract. . . ." ' " (*E. B. Wills Co.* v. *Superior Court* (1976) 56 Cal.App.3d 650, 653-654 [128 Cal.Rptr. 541]; see also *Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 243 [132 Cal.Rptr. 86].)

■ Vienna, however, urges that even though Novick here based its claim of indemnity upon an express contractual provision, the terms of that provision were too general to permit recovery. Nowhere in the provision, it is pointed out, does the "employer" (i.e., Vienna) specifically agree to reimburse "the third person" (i.e., Novick) or hold him harmless for judgments arising out of injuries to *employees* of the employer. That such reimbursement was not contemplated, it is urged, is further manifested by the fact that the provision, while requiring full workers' compensation and liability insurance of the employer, nowhere requested or required that the latter also have a *contractual* liability policy.

We are aware of no authority—and Vienna has cited us to none—which would indicate that specificity of the quantum suggested by Vienna is requisite to the enforcement of an express indemnity clause

against the employer of the injured party. On the contrary, in the case of *Herman Christensen & Sons, Inc.* v. *Paris Plastering Co., supra,* 61 Cal.App.3d 237, it was held that contractual language of a generality comparable to that of the provision now before us was sufficient for this purpose. "[W]e recognize," the court there stated "that it is possible to draw an agreement that specifically refers to 'any person or persons including employees . . .' of the indemnitor. (See *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445, 447 [6 Cal.Rptr. 284, 353 P.2d 924].) Nevertheless we are of the opinion that the language 'any and all claims, suits or liability for . . . injuries to persons' is broad enough to cover such persons as may be employed by the indemnitor in view of the plain meaning of the language. (See *Western Gulf Oil Co.* v. *Oilwell Service Co.* [1963] 219 Cal.App.2d 235, 242.) No extrinsic evidence was offered to support a contrary conclusion." (*Id.* at p. 246.) Similarly, we conclude that the language here in question ("all claims for damages to persons . . . growing out of the execution of the work") comprehends and should be applied to claims by employees of the indemnitor in the absence of extrinsic evidence establishing a contrary interpretation. The fact that the contract did not require Vienna to secure contractual liability insurance does not in itself require the narrower interpretation here urged. ■ ■■■ The contractual language of indemnity must therefore be applied in accordance with its terms, subject to the limitations we now proceed to discuss.[8]

■ "If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. (See *Markley* v. *Beagle* [(1967) 66 Cal.2d 951], at p. 962 [59 Cal.Rptr. 809, 429 P.2d 129]; *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 624 [100

---

[8]Vienna's related contention that the indemnity clause here in question is rendered wholly void by the provisions of section 2782 of the Civil Code—which in general declares void as against public policy all provisions purporting to indemnify the promisee against liability for damages arising from his own "sole negligence or willful misconduct"—is clearly without merit. If it had been the intention of the Legislature, in passing section 2782, to nullify all general indemnity clauses not containing an express disclaimer of any right to indemnification for the promisee's sole negligence, we have no doubt that that intention would have been clearly stated. The lawmakers' presumed awareness of the rule, discussed below, forbidding indemnity under a general indemnity clause when the promisee has been guilty of *any* active negligence (regardless of whatever negligence is attributable to the promisor) further suggests that no such innovation was intended. We think it manifest that the purpose of the Legislature in passing section 2782, having in view certain language previously uttered by this court in the case of *Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 48-49 [41 Cal.Rptr. 73, 396 P.2d 377], was to insure that an indemnitee would not, by contractual language *however specific,* require indemnity for damages sustained as a result of its *sole* negligence or willful misconduct.

Cal.Rptr. 1, 493 P.2d 465].) While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. (*Markley* v. *Beagle, supra,* at p. 962; *Morgan* v. *Stubblefield, supra,* at p. 624; see also *Burlingame Motor Co.* v. *Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656, 661 [93 Cal.Rptr. 376].)" (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].) ■ "Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact; active negligence may be determined as a matter of law, however, when the evidence is so clear and undisputed that reasonable persons could not disagree. (See *Morgan* v. *Stubblefield, supra,* at pp. 625, 627; *Cahill Brothers, Inc.* v. *Clementina Co.* [(1962) 208 Cal.App.2d 367], at pp. 382-383 [25 Cal.Rptr. 301]; see also *Pearson Ford Co.* v. *Ford Motor Co.* (1969) 273 Cal.App.2d 269, 275 [78 Cal.Rptr. 279].)" (*Id.* at p. 629.)

■ It is urged by Vienna that the undisputed evidence before the court in this case establishes that Novick was guilty of active negligence. The evidence in question was to the effect that Novick's job superintendent, a Mr. Wineinger, included among his assigned duties a daily safety inspection of the premises; that it was his practice to report any safety hazards which he detected and could not himself remedy immediately to a Mr. Eklund, foreman for Vienna, who was in charge of the laborers (among whom plaintiff was numbered) and had primary responsibility for erecting the scaffold; and that on the morning of the accident he had noticed that "[t]he scaffold wasn't completed" but did not take action himself or report the matter to Mr. Eklund.[9]

It is manifest that this evidence, taken at its face value, did not compel a finding that Novick was guilty of active, as opposed to passive, negligence. **(11a)** As we said in *Markley* v. *Beagle, supra,* 66 Cal.2d 951, at page 962, "[m]ere nonfeasance, however, such as a negligent failure to discover a dangerous condition arising from the work, will not preclude indemnity under a general clause . . . ." ■ Although here as we have noted, Novick's job superintendent noticed the "condition" which ultimately led to the accident, there was ample evidence in the

---

[9]The accident occurred when plaintiff, pursuant to orders from Eklund either to complete the erection of the scaffold (Eklund's testimony) or to transport certain bricklayers' appliances to the already-erected scaffold (plaintiff's testimony), stepped on an incorrectly overlapped plank in the scaffold, which did not have its guardrails in place; when the plank gave way under him, plaintiff fell to the cement floor below.

record from which it could have been determined that he, in light of Vienna's responsibility for erecting and dismantling scaffolding and the ongoing character of such work, had no reason to consider it "dangerous." Even if his conclusions in this respect fell below the standard of reasonable care in the circumstances, his negligence was no more than passive.

 "The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law. (*Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 381-382.)" (*Morgan* v. *Stubblefield, supra,* 6 Cal.3d 606, 625.) The undisputed facts adverted to by Vienna show no such participation in this case.[10]

Vienna also urges that the trial court made a finding of active negligence. The only "finding" made in this respect, however, was that contained in the court's finding of fact No. 4: "Special interrogatories were submitted to the jury and the jury found that both Novick and Vienna were negligent and that such negligence was a proximate cause of plaintiff's injuries." Clearly this does not indicate a finding by the court—or by the jury for that matter—that Novick's negligence was active rather than passive in character. Vienna never requested that any more specific findings be made.

Vienna argues, however, that the proposed special interrogatories submitted by it to the court for its consideration (see fn. 2, *ante*) included one requesting the view of the jury on the question of active as opposed to passive negligence on Novick's part. The record, however, does not contain the proposed special interrogatories. As we have indicated, the court's decision to submit only the three interrogatories it did submit was not opposed by either of the parties. In any event, the cross-complaint for indemnity was tried, on express stipulation of the parties, *to the court.* No issue was ordered to be tried by the jury (see Code Civ. Proc., § 592) and no proper request for special findings was made (see Cal. Rules of Court, rule 230). The fact that the court, in determining the issues before

---

[10] *Morgan* is clearly distinguishable. There the equipment company providing the scaffold involved in the accident was precluded from indemnity against the employer because it, with knowledge of an applicable safety order to the contrary, provided the employer with a scaffold of improper dimensions and did not make inquiry concerning anchoring procedures to be followed. Here Vienna used its own scaffolds and assembled them at the site.

it on the cross-complaint, chose to have recourse to the views of the jury by means of special interrogatories in order to assist it in its deliberations in no way altered its role as the ultimate trier of fact. The content of those interrogatories was for the court to determine. (Cf. *Bank of Santa Ana* v. *Molina* (1969) 1 Cal.App.3d 607, 624 [81 Cal.Rptr. 885].)

We finally conclude that the judgment rendered by the court on the cross-complaint for indemnity finds ample support in the evidence. There was abundant testimony before the court to the effect that Novick's negligence lay wholly in its failure to take adequate precautions against certain risks and hazards inherent in the employment, while Vienna's negligence lay in its unreasonable and improper employment of its own equipment and its heedless instructions to its employees concerning its use. In these circumstances we must conclude that the judgment awarding indemnity was proper.

It is apparent from the foregoing that the portion of the combined judgment below which is the subject of Vienna's appeal—i.e., that portion awarding judgment for Novick on the cross-complaint—must be affirmed. For reasons indicated above the cross-appeal of Novick from the remainder of the judgment must be deemed abandoned and accordingly is dismissed.

The judgment on the cross-complaint is affirmed. Vienna Stonecraft, Inc. shall bear the costs of R. J. Novick Construction Co., Inc. on appeal. R. J. Novick Construction Co., Inc. shall bear the costs of Ben C. Gonzales on appeal.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.